## Seymour and others, *vs.* Marvin & Allen.

S. & W. were commission merchants at Albany, and the defendants resided at Oswego, and were dealers in wool, sheep skins, and pelts, and had been in the habit of consigning wool and skins to S. &. W.; to be sold on their account. On the 18th of February, 1840, a contract was entered into between the parties, by which S. &. W., on condition that they should have the selling of all of the defendants' wool and skins, agreed to do it at a commission of five per cent ; that they would advance, or accept, on two thirds of the value of property put into their hands ; that they would then advance $2000 in cash for 90 days, at five per cent commissions ; that when drafts should fall due, if not put in funds, they should be at liberty to sell the property at the market price, to meet the same ; or if they should advance the money to pay the same, they would charge five per cent on such advances. *Held* that this agreement was not *usurious, per se.* That the transaction was not a *loan,* to be repaid in cash, like an ordinary loan ; but was an advance made in the course of a legitimate commission business, where extra charges, on money advanced, are sanctioned by law.

*Held also,* that if it was a fair and bona fide transaction in the commission business, usury could not be predicated of it; but if it was a disguised loan, under the cover and in the name of commissions, it was usurious. But that before the court could pronounce the advances to be usurious, it must have some evidence showing that the commissions were exorbitant and unusual.

The court can not take judicial notice of what are the fair and usual commissions on acceptances paid without funds.

Where a party insists that commissions of that nature, charged against him, are so high as to amount to a disguised act of usury, the *onus probandi* is on him.

A usurious contract is executed and extinguished by *payment.* Consequently, after usurious loans and advances have been paid, they can not be recovered back; except that the excess may be sued for within a year, under the statute.

Seymour *v.* Marvin.

Where commission merchants, by direction of their principals, received and sold the goods of the latter, and applied the proceeds to the satisfaction of advances made by the commission merchants, which were alledged to be usurious, and the accounts of sales and of the application of the proceeds were delivered to their principals, and acquiesced in for over two years; *Held* that the payment must be regarded as having been made by the principals themselves.

*Held also,* that when the moneys were applied to satisfy the usurious debt, and the debtors acquiesced in, and ratified the payment, that act became a voluntary payment and satisfaction by the debtors, and extinguished the debt. That after that act there was no *locus pœnitentiæ* for the debtors.

A debtor has the right of saying to what account any given payment shall be applied. When he fails to make a designation, the creditor may apply it as he pleases.

And where a creditor, after having applied a payment made by his debtor to a particular debt, serves on the debtor an account current showing how the payment was applied, which is acquiesced in by the latter, such application will be conclusive upon him.

IN EQUITY. This case came before the court on exceptions taken by the plaintiffs to the report of a referee to whom it was referred to take and state the account between the parties, &c. The bill was filed for an account, and to compel the payment of whatever balance should be found due to the plaintiffs from the defendants. The defendants, in their answer, set up the defense of usury in the agreement under which the plaintiffs claimed to recover. The facts sufficiently appear in the opinion of the court.

*S. Stevens,* for the plaintiffs.

*Geo. F. Comstock,* for the defendants.

*By the Court,* GRIDLEY, J. By the decretal order of reference entered in this cause it was adjudged and decreed that the several accounts current mentioned in the pleadings should be deemed to be prima facie evidence that the items thereof, and the charges and discharges, were correct and just. And also that the defendants should be at liberty to falsify and surcharge the said account only in respect to the errors and omissions

alledged in their answer; and to prove and insist that the con-
tracts and agreements under which the advances of money were
made by the several firms, represented by the plaintiffs, were
usurious and void; and that the said advances were nor prop-
erly allowable in the accounts between the said parties, for that
reason.

In stating the accounts the referee disallowed items in the
plaintiffs' account, which accrued between February 18, 1840,
and the 1st of August in that year, found in schedule A., ·on
pages 164 and 165 of the case, amounting in the aggregate to
$8574,66, on the ground of usury.

It appears that Seymour & Wood, the predecessors of the
plaintiffs, were commission merchants in Albany, and that the
defendants were co-partners, doing business at Oswego; and
were dealers in wool, sheep-skins and pelts.   And that prior to
the 18th day of February, 1840, they had been accustomed to
consign wool and skins to the firm of, which the plaintiffs are
the successors, to be sold on their account.   On that day an
agreement was made by the parties, which was held by the
referee to be usurious; in consequence of which the plaintiffs
have been adjudged to be incapable of recovering any of the
advances made under it.   The proposition of the plaintiffs
which the defendants alledge was accepted by them and consti-
tuted the agreement in question, is in the following words and
figures, viz.:

"Terms. *First.* On condition we have the selling of all your
wool and skins, we will do it at a commission of 5 per cent, in-
cluding all charges, except such as we pay out.   *Second.* We
will advance, or accept, on two-thirds the value of property put
into our hands.   *Third.* We will now advance $2000 in cash
for 90 days at 5 per cent commissions.   *Fourth.* No draft to
be made on property short of, (one at 3 mos. and 3 at 4 mos.
the last falling due the first of August,) $6000 in all.   *Fifth.*
When your drafts fall due (if not put in funds) we are at liberty
to sell the property at the market price to meet the same; or
if we advance the money to pay the same, charge 5 per cent on
such advances.   Feb. 18, 1840.                S. & WOOD."

Seymour *v.* Marvin.

It is a fair presumption, from the evidence, that this proposition was the result of a negotiation with the defendants as to the terms on which the plaintiffs would receive and sell their wool and skins, and make advances and acceptances on the wool and skins sent forward for sale. It is very clear that this two thousand dollars was not an ordinary loan. It was an "*advance*" on the faith of goods to be sent thereafter, and to be paid by a reimbursement out of the proceeds of sales. It was not a *loan* to be repaid in cash; but it was an advance as part of an entire agreement by which the plaintiffs were to have the selling of all the defendants' wool and skins, at a commission of five per cent. It is not called a loan, in the agreement. It was not contemplated that it was to be repaid in money, but it was to be satisfied out of the proceeds of the sales. In truth it has not been insisted, on the argument, that it is to be distinguished from the advances made, or acceptances before the receipt of the proceeds of sales.

I. Now we think that, upon the evidence before us, usury can not be predicated of these advances. It clearly is not usury *per se.* The transaction is not a loan to be repaid in cash, like an ordinary loan. It is an advance made in the course of a legitimate commission business, where extra charges, on money advanced, are sanctioned by law. Nevertheless it *may be* a cover and disguise, under the name and pretense of such advances, to get more than seven per cent for a loan of money. In other words, if this was a fair and bona fide transaction in the commission business, then usury can not be predicated of it; but if it was a disguised loan under the cover and in the name of commissions, then it is usurious. This doctrine will be found to be thus settled in *Trotter & Douglass* v. *Curtiss,* (19 *John. Rep.* 161,) in *Nourse* v. *Prime,* (7 *John. Ch. Rep.* 77, 8, 9;) *Kitchen* v. *Barber,* (4 *Hill,* 227 *to* 236;) *The Dry Dock Bank* v. *The Am. Life Ins. & Trust Co.* (3 *Comst. Rep.* 355 *to* 359.) It is like the case of a loan of money with the sale of goods, where, on the face of the transaction, it may be fair and bona fide; but where it may be shown to be a disguised loan, by extrinsic evidence. For example, A. may loan to B. $1000 and

sell him a horse at $500, and take a security for $1500. Now B. may assail this transaction, and show the horse to be worth only $100, and that he was imposed on him at the advanced price, as a condition of the loan. So in the case under consideration, before we can pronounce these advances to be usurious we must have some evidence showing that the commissions are exorbitant and unusual. But it is insisted that such evidence exists in this case.

(1.) In *Trotter & Douglass* v. *Curtiss*, the plaintiffs charged a commission of two and a half per cent, on the amount of money advanced to meet drafts, where the defendants failed to send produce in time, and interest on the items charged in their account, from the time they became due. But it was proved that the general usage was in accordance with this charge. Chief Justice Spencer, in delivering his opinion, says that there is no pretense for saying that the commission charged by the plaintiff for accepting and paying the defendants' drafts when the defendant had not funds in their hands, was usurious. He puts his decision on the ground that the commission business was lawful; and that it was only where an exorbitant charge was made under the color of commissions, showing that the party intended, under that device, to get more than seven per cent for the use of his money, that the claim of usury could be supported. This was precisely like the case at bar, except that in the latter there is no proof of usage, and the commission was five per cent instead of two and a half, a distinction which I shall consider under another head. In *Nourse* v. *Prime*, (7 *John. Ch. Rep.* 77, 78,) Chancellor Kent held that half per cent commissions, agreed to by the parties, charged by stock brokers, was not usurious, though there was no evidence of usage. In *Suydam* v. *Westfall*, (4 *Hill*, 214, 224,) a majority of the court expressly approved of the case of *Trotter & Douglass* v. *Curtiss*, as an *authority*, and held a similar agreement free from usury. In *Suydam* v. *Bartle*, (10 *Paige*, 97,) there was no evidence of usage, and the chancellor says that if it were provided in the agreement that an advance should be made, it would still be a question of fact whether the two and a half per cent was intend-

ed. as a mere shift to cover an usurious premium on such advances as a compensation for the trouble and expense. On general principles, in the absence of any other proof that the price charged as commissions was unusual or exorbitant, it devolves on him who asserts that it is so, to prove the allegation. In *Nourse* v. *Prime,* before cited, Chancellor Kent says (7 *John. Ch. Rep.* 77,) " whether money was demanded or received usuriously, is a matter of fact, and rests upon the *intent ;* and that intent ought at least to be charged, and confessed or proved. The court ought not to undertake gratuitously to deduce such intention, when the case is susceptible of another and better construction." In the case of *Marvin* v. *Feeter,* (8 *Wend.* 534,) it was held that a note which reserved interest from a day anterior to its date, furnished no evidence of usury. That there might be some arrangement arising out of the consideration of the note, that would render the reservation of interest allowable. That usury was a defense to be strictly proved, and the court would not *presume* a state of facts to sustain it. That where an intent is open to two constructions, one of which would render it operative, and the other void, the former should be adopted. In *Merritt* v. *Benton,* (10 *Wend.* 116,) it was decided that including one per cent as the difference in exchange between Utica and New-York was not usury *per se ;* and as there was no evidence of what the true rate of exchange was, the plaintiff recovered. (See to the same point 3 *Cowen's Rep.* 284, 290 ; *Cro. Car.* 501.) We therefore think it was incumbent on the defendants to give some evidence showing that the percentage was unusually high, if they desired the court to hold the transaction usurious. The *onus probandi* was on them, to show that the advances charged as commissions were loans in disguise. The evidence of usage, if such evidence existed, should come from the defendants.

(2.) It is argued that the courts can take judicial notice that five per cent is an unusual commission ; and that in the cases of *Trotter & Douglass* v. *Curtiss, Suydam* v. *Westfall, and Suydam* v. *Bartle,* the commission was only two and a half per cent. To this suggestion there are two conclusive answers :

1st. These cases are not evidence of facts established or assumed on the trials, such as the customary charge of commission merchants on acceptances without funds. Should a counsellor, on a trial at nisi prius offer to prove, by reading those cases, what was, at Albany, between the 18th of February and the 1st of August, 1840, the customary commissions on the sales of wool and skins, and on acceptances without funds, he would be met by an objection that the case settled under the rules of court was no *evidence* of the *facts* in the cause before the court. Those facts were not proved, but were such as the parties had agreed on and the judge had settled. (2 *Hill*, 535. 15 *Wend.* 193.) The case is not between the same parties. (22 *Wend* 178.) The testimony did not have reference to the same *matter*. The case of *Suydam* v. *Westfall* respected the commission where the produce was *flour*. In the case at bar it was *wool and skins*. It did not relate to the same *time*. In truth there is no possible ground on which a reported case can be made evidence of the facts stated therein, against a stranger. 2d. The court can not take *judicial notice* of what are the fair and usual commissions on acceptances paid without funds. What may have been a fair and reasonable commission in 1840, may be very different in 1845. So too what may be the usual commission on *flour* and such like commodities, the sale of which is for cash, and promptly made, may be very different from the commissions on wool and skins, which are subject to great fluctuation and may be kept on hand a long time without sale. All these considerations are very material to vary the rate of commissions charged. And no court can undertake to pronounce that five per cent was an *unreasonable charge in* 1840, where the articles were wool and skins, and when no witness has been produced who has testified to this fact. The defendants examined witnesses residing in Albany and Oswego, who were dealers in wool, but the question whether those charged were unusually high was not put to them.

(3.) The *presumption* from the facts proved is that the charge was a *reasonable one*. The omission to examine the witnesses who were competent to speak on this point, renders it probable

that their testimony would have shown the sum charged to be reasonable commissions. Again, if this were an exorbitant charge for commissions why did the defendants, who were experienced dealers in wool, accept the proposition contained in the exhibit dated the 18th of February, 1840? There were many other commission houses in Albany; and the spirit of rivalry and competition would have enabled the defendants to select a house that would do their business for a commission as low certainly as the customary rate. Again, the correspondence shows that the plaintiffs did not consider these advances by any means desirable to them. In the letter of April 25, 1840, the plaintiffs express their regret at receiving the drafts, which they would have to pay with their own money. And the whole correspondence shows that during this season both wool and skins were very low in the market, and that great pains were taken to make sales even at the prices those commodities would bring. Exhibit No. 5, is an account of sales, which shows how long the wool mentioned in it had remained on hand. The period was some nine or ten months. Now such being the condition of the wool market in 1840, can we say judicially that five per cent was an extravagant commission for advances and acceptances during that season? Especially when we know that the customary rates of commissions are dependent on those very circumstances? We think not. We say, as the court said in *Marvin* v. *Feeter*, (8 *Wend.* 534,) " We will not *presume* a state of facts to sustain that defense [the defense of usury] where the instrument [in this case the *contract*] is consistent with fair dealing." On the face of this transaction the items stricken out by the referee were commissions charged in a lawful business. And if the defendants would insist that they were so high as to amount to a disguised act of usury, the *onus probandi* was on them.

II. But suppose we are mistaken in our views on this point; and it be conceded that the advances were usurious; then the plaintiff claims that the usurious loans and advances are *paid*. If they have been in fact paid, I do not understand it to be contended that they can be recovered back. The excess may

be recovered back within one year, by virtue of the statute. (1 *R. S.* 772, § 3.) But beyond this the party can not be allowed to go. The contract is executed and extinguished by *payment.* If a debtor conveys land to his creditor, in satisfaction of a usurious debt, the deed can not be avoided for usury. (*Den* v. *Dodds,* 1 *John. Cas.* 158.) So if a debtor makes an assignment, devoting his property to pay an usurious debt, in preference to others who are postponed but provided for in the deed, neither the other creditors claiming under the assignment, nor the assignees themselves, can set up usury against such debt. (*Bell* v. *Adams,* 7 *Paige,* 639, 641, 2, 4. *Green* v. *Morse,* 4 *Barb. S. C. Rep.* 341, 2. *Dix* v. *Van Wyck,* 2 *Hill,* 524.) If these advances have been *paid,* therefore, it does not matter that the goods received under a usurious contract were tortiously received. (5 *Denio,* 240.) Nor that the authority to sell, being part of the same illegal contract, is equally void. The question is, after all, whether the advances have been *paid.* The facts on which the plaintiffs rely to show that the advances have all been paid and satisfied, are as follows :

On the first of August, 1840, an account current was rendered to the defendants, in which the alledged usurious items were charged, and the defendants credited with moneys received, by which there appears a balance due the plaintiffs of $2,072,67. The alledged usurious advances were all made prior to the 18th of June, 1840. After this date the plaintiffs advanced and paid, for the defendants, $2,458,62 more than the balance due the plaintiffs upon the account current. On the first of August succeeding, the defendants were credited with the net proceeds of sales, to the amount of $13,825,75. This account was acquiesced in. On the 13th of December, 1840, another account current was delivered to the defendants, in which they were charged with the balance on the preceding account ($2,072,67,) and with the moneys advanced and paid, wholly free from usury, to the amount of $16,810,84, and are credited with $7,272,07. This satisfied the balance due on the 1st of August, 1840, and a large sum over. (See schedules D. and E. pp. 28 to 30, and pp. 31 and 32.) There were seven other accounts current ren-

dered at different times after December, 1840, showing the previous balances paid up successively, all of which were acquiesced in, without objection. On the first of April, 1841, the defendant Robertson became a member of the concern as a partner, on the faith of this balance, thus acquiesced in. And on the 1st of January, 1842, Mr. Wood died, and the defendant Forsyth became a partner in his room, on the faith of the balance then appearing due on the accounts rendered and acquiesced in.

We will now consider whether the advances charged to be usurious were not all paid as early as the 31st December, 1840. These advances had all been made before the first of August, 1840. After these usurious debts had accrued, the defendants sent wool and skins to the plaintiffs, which were converted into cash, and the proceeds were applied to the payment of these very advances, in pursuance of an agreement of the defendants. At any time before the application of these proceeds it is true that the defendants might have forbidden it, and directed the application to some other account; but they did not. They virtually directed the application precisely as it was made. It can not be denied that had the defendants sold the goods themselves and received the money, and paid it over to the plaintiffs, such payment would have been a satisfaction of the debt. Or had they sent the goods to some third person to be sold, and he had, in pursuance of the defendants' directions, paid over the proceeds, such payment would have been a satisfaction on the familiar principle, *qui facit per alium facit per se.* How does the application of the proceeds of the sales, by the plaintiffs themselves, to the payment of the advances, differ in legal effect? We can see no difference whatever. When the plaintiffs, by direction of the defendants, received and sold the goods, and applied the proceeds to the satisfaction of the usurious advances, they were acting with the consent and by the directions of the defendants. When those advances were thus paid, and the accounts of sales and of the application of the proceeds were delivered to the defendants, and acquiesced in for over two years, and till after the members of the firm had been twice changed, the payment must be regarded in law as made

by the defendants themselves. It may be that the goods de-
livered under an usurious agreement were still the goods of the
defendants; and when sold under the same void contract the
proceeds were still the moneys of the defendants; but where
the moneys were *applied to satisfy a usurious debt,* and the
defendants acquiesced in and ratified the *payment,* that act
became a voluntary payment and satisfaction by the defend-
ants, and extinguished the debt. After that act there is no
*locus pœnitentiæ* for the defendants: They can no more revoke
this payment than he who had conveyed land in satisfaction of
a usurious debt, could revoke the deed. The advances were
paid, just as absolutely and unconditionally as if the money
had been paid over by the hands of the defendants themselves.
The learned counsel for the defendants has not been able to
cite a single case, nor to advance a single argument, against the
conclusiveness of this payment.

The law as to the application of payments is too plain to need
the citation of cases in support of it. The debtor has the right
of saying to what account any given payment is to be applied.
When he fails to make a designation the creditor may apply it
as he pleases. The plaintiffs applied the proceeds of sales to
the payment of this very account for advances alledged to be
usurious, and served on the defendants an account current show-
ing such an application of the funds; which, being acquiesced
in, the law declares is conclusive on them. (*Pattison* v. *Hull,*
9 *Cowen,* 747. *Baker* v. *Stackpool, Id.* 420. 15 *Wend.* 19.
9 *Wheat.* 720. 3 *Denio,* 290, 5 *Id.* 470.)

It may be proper to say that this is not a case in which, from
the omission of the parties to make an application of the pay-
ment, the law makes it for them. If it were such a case then
the case of *Wright* v. *Laing,* (3 *B. & Cress.* 165; 10 *Eng.
Com. L. Rep.* 44,) shows that the law would apply the pay-
ments to satisfy a valid debt, rather than a debt infected with
usury. But this authority admits that it is only where the
parties have made no application of the payments that the law
appropriates them, even in the case of manifest usury.

Again; if the application of these moneys should not be re-

garded as payment of the advances, still under the circumstances of this case, it seems to us that the defendants should be estopped from setting up the defense of usury. With full knowledge of the usurious character of these advances, (if in truth they were usurious,) they stood by and saw Robertson and Forsyth at different times enter into the concern as co-partners, and invest their capital against this large sum of $8,574,66, under the impression that it was honestly due. After this, can they be allowed to say to these gentlemen that this balance is usurious? Did not these incoming partners embark their money on the faith that this sum was due from the defendants? And did not the defendants, by assenting to the accounts when rendered, by omitting to speak when they should have done, lure the parties on to an investment of their money against a balance which they now claim to be usurious, and resulting in a total loss, if the defendants shall ultimately prevail? We think this should not be allowed upon the ordinary principles of justice; but the decision of the cause need not be placed on this ground. Upon the other points we have discussed, and for the reasons we have given, we are of opinion that the exceptions of the plaintiff to the report should be allowed, and the case be referred back to the referee to re-state the account on the principle of allowing instead of deducting the disputed items.

[Oswego General Term, May 5, 1851. *Pratt, Gridley, Allen* and *Hubbard*, Justices.]