(157 App. Div. 804.)

## CURTISS v. TELLER.

(Supreme Court, Appellate Division, Fourth Department. July 8, 1913.)

1. APPEAL AND ERROR (§ 931*)—PRESUMPTIONS—FINDINGS IMPLIED.
   Where both parties moved for a direction of the verdict, neither party asking to go to the jury upon any question, and at an adjourned day of the term the court directed a verdict, every question of fact must be regarded as having been found against the defeated party.
   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3728, 3762–3771; Dec. Dig. § 931.*]

2. USURY (§ 80*)—EFFECT OF USURY.
   Plaintiff, for a loan of $10,000, executed his note for $15,000, and as collateral security pledged 160 shares of stock. Defendant sold the stock under an agreement with plaintiff that the proceeds should abide the event of an action on the note. Before an action by plaintiff to recover the proceeds of the stock, defendant tendered to plaintiff the amount in excess of the principal and lawful interest. *Held*, that the note and pledge were both void for usury, and that defendant acquired no title to the stock.
   [Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 158–160; Dec. Dig. § 80.*]

3. USURY (§ 80*)—RECOVERY OF STOCK PLEDGED AS COLLATERAL.
   Except for plaintiff's acquiescence in the sale of the stock, he could have maintained an action of trover for the stock.
   [Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 158–160; Dec. Dig. § 80.*]

4. USURY (§ 102*)—RECOVERY OF COLLATERAL PLEDGE.
   Plaintiff can recover the proceeds of the sale of the stock in an action for money had and received, without returning or offering to return the money actually received.
   [Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 197, 241, 242, 244–258; Dec. Dig. § 102.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. USURY (§ 88*)—PENALTIES AND FORFEITURES.

  General Business Law (Consol. Laws 1909, c. 20) § 376, in the chapter relating to usury, provides that every person who shall pay or return the usurious interest taken or received shall be acquitted and discharged from any other or further forfeiture, penalty, or punishment which he may have incurred by having taken the interest. *Held* that, in view of preceding legislation on the subject, this section includes only obligations or securities which, under section 373, the court may declare void and enjoin prosecution thereon, and the fact that the lender has returned the amount in excess of the principal and lawful interest does not prevent the borrower from recovering stock pledged as collateral without payment of the principal or lawful interest.

  [Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 176–187; Dec. Dig. § 88.*]

Appeal from Trial Term, Erie County.

Action by Harlow C. Curtiss against George R. Teller. From a judgment in favor of plaintiff for less than the amount claimed, he appeals. Reversed.

See, also, 140 App. Div. 940, 126 N. Y. Supp. 1126.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

James McCormick Mitchell, of Buffalo, for appellant.
Adelbert Moot, of Buffalo, for respondent.

KRUSE, P. J. The controversy is over 160 shares of Wood Products Company Stock, or the proceeds of the sale thereof. The stock belonged to the plaintiff, and was pledged as collateral security for the payment of a certain note made by him for $15,000, dated January 8, 1904, payable three months after its date, to his order, and indorsed by him in blank. The note, thus indorsed, together with the certificates for the stock, assigned by the plaintiff in blank, was delivered by the plaintiff to one William T. Jebb, for the purpose, as he claimed, of raising money to put into a business venture. The defendant discounted the note for Jebb, paying him $10,000, and the note was transferred by Jebb to the defendant, together with the stock as security therefor. The defendant thereafter sold the stock, receiving therefor the sum of $14,000, which the plaintiff seeks to recover in this action.

The defendant brought an action in the Supreme Court to recover upon the note, which was resisted, and the complaint was dismissed by default. Thereupon this action was brought. The plaintiff contends (1) that the note had no legal inception before its delivery to the defendant, and that therefore the defendant has no right to the collateral or the proceeds realized from the sale thereof; (2) that the note and collateral were intrusted by the plaintiff to Jebb as his agent for a particular purpose, and diverted contrary to such purpose, and discounted by the defendant, with full knowledge of its diversion; (3) that the defendant made an agreement with the plaintiff, permitting the defendant to sell the stock and pay the proceeds over to the plaintiff, upon a favorable termination of the action upon the note. After the sale of the stock, and before the commencement of this action, and on or about

September 4, 1909, the defendant tendered to the plaintiff the sum of $2,682, which he claims is the usurious excess, and that by returning the usurious excess he became acquitted of any further forfeiture, and is entitled to retain the amount advanced, with lawful interest.

At the close of the trial the defendant moved for the direction of a verdict in his favor, except as to the amount tendered, conceding as to that, with interest, the plaintiff was entitled to recover. Thereupon the plaintiff moved for the direction of a verdict in his favor for the full amount claimed, with interest. The matter was left in that shape till a later day in the term; defendant's counsel remarking that an exception might be noted for the defeated party. Neither party asked to go to the jury on any question. On the adjourned day a verdict was directed in favor of the plaintiff for the amount tendered, with interest from the 10th day of September, 1909.

[1] I think it is well settled that under such circumstances every question of fact must be regarded as having been found against the defeated party. Respecting the claim that there was a diversion of the note, and the claim that an agreement was made permitting the sale of the stock, with the understanding that the proceeds should abide the event of the action upon the note, I think that, so far as there is any evidence tending to support the plaintiff's claims in this respect, there is evidence to the contrary which warrants a finding against the plaintiff's contention, although the sale of the stock seems to have been made with the acquiescence of the plaintiff.

[2] As to the claim that the note was usurious, I am of the opinion that, if it had no legal inception until it was discounted by the defendant, it is void for usury. But the question arises whether or not the defendant, who discounted the note in good faith (as I think we should assume), is entitled to the proceeds realized from the sale of the stock to the extent of the amount he actually advanced on the note and stock, as is claimed in his behalf. As we have seen, the stock was sold with the plaintiff's acquiescence before the commencement of this action, and the proceeds applied by the defendant upon the loan. The amount realized was less than the face of the note, but more than the amount of the money advanced, with legal interest. Thereafter the defendant tendered the excess, together with interest thereon from the date of sale, to the plaintiff. While the plaintiff acquiesced in the sale, he did not consent to the application of the proceeds as defendant assumed to apply them. He claimed that the transaction of discounting the note and transferring the stock was usurious and void, and that he was entitled to the stock and the proceeds.

The defendant contends that the plaintiff's action is founded upon a claim of forfeiture; that by tendering back the excess over and above the moneys advanced by him, with legal interest, he was acquitted of the forfeiture under the provisions of section 376 of the General Business Law, in the article relating to usury (Consol. Laws, c. 20 [Laws 1909, c. 25] art. 25, § 376), which reads as follows:

"Sec. 376. Return of Excess a Bar to Further Penalties.—Every person who shall repay or return the money, goods or other thing so taken, accepted or received, or the value thereof shall be acquitted and discharged from any

other or further forfeiture, penalty or punishment, which he may have incurred, by taking or receiving the money, goods or other thing so repaid, or returned, as aforesaid."

The usury statute does two things: (1) Declares the usurious transaction void; and (2) provides for forfeitures and penalties against the usurer. General Business Law, art. 25. Section 372 provides:

"Sec. 372. Recovery of Excess.—Every person who, for any such loan or forbearance, shall pay or deliver any greater sum or value than is above allowed to be received, and his personal representatives, may recover in an action against the person who shall have taken or received the same, and his personal representatives, the amount of the money so paid or value delivered, above the rate aforesaid, if such action be brought within one year after such payment or delivery. If such suit be not brought within the said one year, and prosecuted with effect, then the said sum may be sued for and recovered with costs, at any time within three years after the said one year, by any overseer of the poor of the town where such payment may have been made, or by any county superintendent of the poor of the county, in which the payment may have been made."

Not only does the statute avoid usurious transactions, but provides for the surrender and cancellation of obligations and securities taken by the lender in violation of the statute. General Business Law, § 373. The section reads as follows:

"Sec. 373. Usurious Contracts Void.—All bonds, bills, notes, assurances, conveyances, all other contracts or securities whatsoever, except bottomry and respondentia bonds and contracts, and all deposits of goods or other things whatsoever, whereupon or whereby there shall be reserved or taken, or secured or agreed to be reserved or taken, any greater sum, or greater value, for the loan or forbearance of any money, goods or other things in action, than is above prescribed, shall be void. Whenever it shall satisfactorily appear by the admissions of the defendant, or by proof, that any bond, bill, note, assurance, pledge, conveyance, contract, security or any evidence of debt, has been taken or received in violation of the foregoing provisions, the court shall declare the same to be void, and enjoin any prosecution thereon, and order the same to be surrendered and canceled."

Then follows section 376 above quoted. Section 377 provides as follows:

"Sec. 377. Borrower Bringing an Action Need Not Offer to Repay.—Whenever any borrower of money, goods or things in action, shall begin an action for the recovery of the money, goods or things in action taken in violation of the foregoing provisions of this article, it shall not be necessary for him to pay or offer to pay any interest or principal on the sum or thing loaned; nor shall any court require or compel the payment or deposit of the principal sum or interest, or any portion thereof, as a condition of granting relief to the borrower in any case of usurious loans forbidden by the foregoing provisions of this article."

[3-4] The position of the learned counsel for the defendant is this: The defendant having tendered to the plaintiff the excess over and above the lawful rate of interest on the money he actually advanced upon the stock, and the plaintiff having consented to the sale of the stock, the plaintiff is not now in a position to maintain his action on contract for moneys had and received, contending that, if he desires to recover the proceeds of the sale of the collateral, he must pay the defendant the amount advanced by him with lawful interest, that the obligation to surrender the pledge or proceeds without payment of the debt, pursuant to sections 373 and 377 above referred to, is another or

further forfeiture which the defendant may have incurred, but from which he has been acquitted and discharged by the return of the usurious excess pursuant to section 376, and that such acquittance covers all forfeitures under the statute.

I do not see that the sale of the collateral changed the situation of the parties. If the plaintiff had consented to the application of the proceeds of the sale, as made by the defendant, I think his recovery would be limited to the usurious excess. Seymour v. Marvin, 11 Barb. 80, 90; Smith v. Marvin, 27 N. Y. 137; Williams v. Fitzhugh, 37 N. Y. 444.

It is true, as counsel contends, that in People v. Young, 207 N. Y. 522, 101 N. E. 451, Judge Willard Bartlett, in speaking for the court, stated that the phrase, "forfeiture, penalty or punishment," contained in section 376, relative to restitution, comprises only such forfeitures, penalties, or punishments as are mentioned in the General Business Law itself. It is therefore urged that by inference the section is there held to include all such forfeitures, penalties, or punishments. I do not think that conclusion follows. What was there said was by way of limiting the effect of the section. The court does not assume to point out the condition under which a lender may be acquitted under the provisions of that section. The question there was whether restitution of a usurious excess, taken contrary to the Banking Law, discharged the offender from criminal liability, and it was there held that it did not, and the statement was made in that connection.

Some of the provisions of the present usury law have been in our statutes for many years. As early as 1717 the law-making body of the colony passed an act against usury which by its terms expired in five years (1 Colonial Laws, p. 909, c. 328), and a similar act was passed in 1737 which avoided usurious contracts and obligations, and imposed upon the lender a penalty or forfeiture of treble the value of the money loaned, and upon a broker who took brokerage in excess of the rate fixed in effecting a loan a forfeiture of £20. and costs, one half of the forfeitures to be paid to the king, and the other half to the person suing. 2 Colonial Laws (Comp. Stat. Rev. Comm. p. 980) c. 660. After the colony became a state, and in 1787, an act was passed which retained the essential provisions of the colonial act, but reduced the amount of the forfeiture to the unlawful excess, giving one half to the person suing and the other half to the use of the poor of the town or place where the offense was committed, and in connection therewith provided for filing a bill of discovery against the lender or broker who had taken unlawful excess. Laws 1787, c. 13. This act was republished with the Revised Acts of 1801 (1 K. & R. 57), and with the Revised Laws of 1813 (1 R. L. 64). While the statute declared usurious obligations void, the courts recognized the moral obligation of the borrower to repay the money which he had actually received, and in the courts of equity he was required to repay or offer to repay the sum, together with interest, in order to obtain relief. Fanning v. Dunham, 5 John. Ch. 122, 9 Am. Dec. 283, decided in 1821; Early v. Mahon, 19 Johns. 147, 10 Am. Dec. 204, decided in 1821. In the last case above cited, Chief Justice Spencer declared:

"I consider it entirely settled that, notwithstanding the security be usurious, the money lent is a debt in equity and conscience, and ought to be repaid. This principle has long been acknowledged and acted upon in courts of equity."

The question there was whether, when money was lent upon a usurious contract, which had been avoided, there existed such a moral and equitable duty on the part of the borrower that a subsequent promise by him to pay the money actually lent could be enforced at law in an action founded upon the promise. On that subject it is said:

"Here the lending, and the usurious agreement, were contemporaneous acts. The usury infected the whole transaction; but I do say, in the words of Mr. Justice Lawrence: 'The usury could not annihilate the sum of money itself, nor the fact of the receipt of the money.' And it does not admit of a doubt that the defendant having had the plaintiff's money, without any consideration or security, but a void bond, the promise subsequently to repay this money was founded upon a moral and equitable duty."

In 1827 the commissioners for revising the statutes proposed various changes in the usury law. They proposed to avoid the security, but to permit the lender to recover the money actually loaned, and to exempt from the consequences of taking usury all negotiable paper in the hands of bona fide holders for value. They further proposed that the usurious lender should not be entitled to recover any interest, and that the borrower who paid more than the legal rate might within one year recover from the lender three times the amount of the excess. The provision for filing a bill of discovery was retained, and also for the acquittance and discharge of the lender upon making restitution. Respecting the bill of discovery, it was proposed that it should not be necessary for the debtor to pay or offer to pay any interest on the sum or thing loaned, but he should deposit with the clerk of the court the principal sum admitted by him to have been loaned. See Revisers' Report of R. S. pt. 2, c. 4, tit. 3; 3 R. S. (2d Ed.) p. 611 et seq.

It will thus be seen that the commissioners proposed to retain in effect the principle, which the Court of Chancery had applied, of requiring the borrower to pay back the money which he had received from the lender as a condition of equitable relief. The Legislature, however, rejected all the new provisions save the one which excepted negotiable paper and the other which dispensed with the necessity of the borrower paying or offering to pay the interest as a condition for filing a bill of discovery. See R. S. pt. 2, c. 4, tit. 3; 1 R. S. 771, § 1 et seq.

[5] In the section dispensing with the payment of interest it was also provided that no court of equity should require or compel the payment or deposit of the principal, or any part thereof, as a condition of granting relief to the borrower in the case of a usurious loan (1 R. S. pp. 772, 773, § 8); but it was held that that provision did not apply to a bill of discovery. In Livingston v. Harris, 11 Wend. 329, decided in 1883, the practice which obtained upon a bill in chancery for a discovery and the relief granted in case of usurious loans are set forth, and the provisions of the Revised Statutes, which took effect in 1830, dispensing with the payment of interest on the loan and the

payment or deposit of the principal sum, are discussed. It is there said:

"Previously to the adoption of the Revised Statutes, the principles upon which a party to a usurious contract could, in a court of equity, compel discovery of, and obtain relief against, the usurious premium, were perfectly well settled. Neither discovery nor relief could in any case be obtained in the Court of Chancery, without a repayment of the sum actually lent, with lawful interest, because the borrower could not, in any case or under any circumstances, be *equitably* entitled to keep the money which he had actually received from the lender, and for which the lender had received no consideration. He was therefore met by that cardinal maxim of a court of equity, that 'he who asks for equity must do equity,' and could obtain no aid from that jurisdiction, in getting rid of or recovering back the amount which had been improperly exacted from him, until he repaid the amount which in justice and equity was due from him to the defendant. *Relief*, under such circumstances, where the complainant did not ask for or need a *discovery*, was refused exclusively upon this principle; but where he had no legal evidence of the usury, and the object of his bill was to compel the defendant to disclose or admit the fact, he had an additional difficulty to encounter, to wit, that a court of equity will not compel a defendant to answer upon oath, and thus become a witness for his adversary and against himself, where such answer may subject him to a criminal proceeding, or to a penalty or forfeiture, or to any loss in the nature of a forfeiture. In such a case, therefore, he was bound to waive the forfeiture and pay the amount actually loaned, not only because it was just and equitable, but in order to guard against the possibility of the defendant's answer being made the means of subjecting him to a forfeiture."

After succinctly stating the provisions of the Revised Laws of 1813 (1 R. L. p. 64), the law as it stood before the revision of 1830 is stated thus:

"Every usurious contract, and every instrument, of whatever kind or description, taken as the evidence of such contract, were absolutely void; and when sued upon such contract, all the borrower had to do was to prove the usury, and no recovery could be had against him. He defeated the recovery, not only of the usurious excess, but of the sum actually loaned. If he had legal and sufficient evidence of the usury, his defense was perfect at law, and he had no occasion to invoke the aid of a court of equity. If the knowledge of the usury was confined to himself and the lender, then it became necessary for him to go into a court of equity, and by a bill of discovery to call upon the lender to admit or deny the usury. He was then, for the reasons which have already been stated, bound to waive the forfeiture, by paying or offering to pay the sum actually loaned with interest. And in some cases, where the form of the security was such as to enable the lender to collect it without a suit either at law or in equity (as a bond and warrant of attorney, or a mortgage), the borrower, although he had competent evidence of the usury, still, as he had no opportunity, from the form of the proceeding, to avail himself of it at law, was compelled to file his bill, and ask *relief* in equity. In such a case, also, although he sought and required no *discovery*, a court of equity would not relieve him from the usurious excess, except upon the equitable condition of his repaying the sum actually loaned."

As will be seen by reading the case, the courts were still struggling to require the borrower to pay back the money he had received, as a condition of obtaining any relief in a court of equity. That principle seemed so just, and had been so long applied, that courts were unwilling to recede from that doctrine, unless required to do so by clear and positive statutory enactment.

These questions provoked much discussion and some criticism of the courts in their reluctance to recede from the equitable rule. As

illustrating the earnestness and ability with which these questions were discussed, I may call attention to the opinions in Livingston v. Harris, supra, and Henry v. Bank of Salina, 5 Hill, 523, 533–537. The contest which had been going on between those who contended that the borrower should return at least the sum obtained from the usurious transactions and those who were utterly opposed to the lender receiving anything, and favored punishing him criminally besides, culminated in the act of 1837 (Laws 1837, c. 430), making the usury law more drastic. By section 1 of the act of 1837, section 5 of title 3 of chapter 4 of part 2 of the Revised Statutes was amended by striking out the provisions excepting commercial paper in the hands of a bona fide holder from the effect of the usury statute, making usurious contracts void, but in terms saving such commercial paper as had been made and transferred before the act of 1837 took effect. Section 2 of the act of 1837 provided that whenever in an action at law the defendant should plead or give notice of the defense of usury, verifying the same by affidavit, he might, for the purpose of proving the usury, call and examine the plaintiff as a witness. Section 3 provided that the offender might be compelled to answer on oath any bill in chancery for relief or discovery, or both, thus covering substantially the provisions of section 6 of title 3 of chapter 4 of part 2 of the Revised Statutes, except that it was extended to bills for relief as well as discovery. Section 4 of the act of 1837 provided that whenever any borrower should file a bill in chancery for relief or discovery, or both, against any violation of the act, or of the title of which the act was a part, it should not be necessary for him to pay or offer to pay any interest or any principal, and a court of chancery should not require or compel the payment or deposit of the principal sum or interest, or any portion thereof, as a condition of granting relief or compelling or discovering to the borrower usurious loans, covering the essential provisions of section 8 of title 3 of chapter 4 of part 2 of the Revised Statutes, except that the payment of interest and principal was extended to both bills for discovery and bills for relief. Section 5 of the act of 1837 further provided that, whenever it should satisfactorily appear by the admissions of the defendant or by proof that any bond, bill, note, assurance, pledge, conveyance, contract, security, or any evidence of debt had been taken or received in violation of the provisions of the act, or of the title of which the act was a part, the Court of Chancery should declare the same to be void and enjoin any prosecution thereon, and order the same to be surrendered and canceled. Section 6 made it a misdemeanor for a person to receive usury. Section 7 enjoined upon the courts to charge the grand jury especially to inquire into violations of the usury statute. Section 8 made false swearing perjury, but provided that the testimony given by the plaintiff or the answer of any defendant should not be used against him before the grand jury, or on the trial of an indictment. Section 9 repealed so much of title 3 of chapter 4 of part 2 of the Revised Statutes, which related to usury, as was inconsistent with the act. Section 10 made the act effective July 1, 1837. The act did not contain the section of the Revised Statutes relating to making restitution; neither did it expressly repeal it. Sections 6, 7, and 8

were repealed by subdivision 12 of section 1 of chapter 593 of the Laws of 1886; but the taking of usury had been made a misdemeanor by section 378 of the Penal Code (Laws 1881, c. 676), which was passed July 26, 1881, and became effective December 1, 1882. Penal Code, § 727, as amended by Laws 1882, c. 102. It was amended by chapter 72 of the Laws of 1895 and chapter 661 of the Laws of 1904.

To recapitulate, after the amendment of 1837, the usury statute stood about as follows: (1) All usurious contracts, obligations, and securities were void. (2) Excess interest above the legal rate was recoverable by the party, or under certain conditions by certain designated officers. (3) The lender could be compelled to deliver up all usurious obligations, contracts, and securities, without borrower paying back anything. (4) The taking of usury was a misdemeanor. (5) Immunity to the lender upon making restitution. These provisions in their essential features are contained in the present General Business Law relating to usury (Consol. Laws, c. 30 [Laws 1909, c. 25] art. 25), except that the provision for criminal liability is omitted, and the provisions relating to discovery and relief have been made to conform to the present practice; the Court of Chancery having been abolished, and what was formerly called a bill in equity would now be called the complaint.

Article 25, above referred to, covers the statutes relating to usury and unlawful brokerage, and affecting loans upon real estate. These provisions, except those relating to loans on real estate security, which were added by chapter 467 of the Laws of 1895 to section 1 of article 1 of title 19 of chapter 20 of part 1 of the Revised Statutes, were together in the Colonial Statute of 1737 and in the act of 1787, above referred to; but in the Revision of 1830 the provisions relating to brokerage and those relating to usury were separated (1 R. S. 709, § 1 et seq.; Id. 771, § 1 et seq.), and so remained until the consolidation of the statutes of 1909, when they were again put together in the same article. But the provisions relating to usury and unlawful brokerage are not included together in the same sections, as they were in the act of 1787. As will be seen by the Report of the Board of Statutory Consolidation (volume 2, pp. 2034–2036) section 376 was evidently taken from section 7 of the usury law (R. S. pt. 2, c. 4, tit. 3, § 7), and sections 381 and 382 come from the statute regulating brokerage charges (R. S. pt. 1, c. 20, tit. 19, art. 1, §§ 2, 3, 5). This very likely accounts for having two provisions so similar in the same article in the consolidation of 1909.

As we have seen, under the provisions of the act of 1787, the provision for immunity was connected with and included in the same section which provided for the filing of a bill of discovery, and under the practice in the Court of Chancery the borrower was required to pay both principal and interest before filing his bill; so that the lender only forfeited the excess interest, unless, of course, he was compelled to resort to a court of law to enforce his obligation, and practically the only forfeit he incurred was the excess interest, and when he made discovery and a restitution he was absolved from any further penalty or forfeiture to the borrower or to the public officers

who could sue and recover the excess interest. But when the act of 1837 took effect, and a provision was made for surrendering up and canceling the usurious obligations and securities without the borrower paying principal, interest, or any part of it, the forfeiture in practical effect was not limited to the excess interest.

The contention of the defendant, in effect, amounts to a restoration of the old chancery rule, which saved to the lender the money which he had actually advanced upon the usurious loan, together with interest thereon. I do not think the consolidation of 1909 has had that effect. I am of the opinion that the provisions of the General Business Law are substantially the same as were those of the Revised Statutes before the consolidation took effect. In the Revised Statutes the provision for immunity, although not in the same section as in the act of 1787, immediately follows that for discovery and relief, and compelling the lender to surrender usurious obligations and securities without return by the borrower, and that arrangement has been adhered to in the General Business Law, except that there are two intervening sections, prohibiting corporations from interposing the defense of usury and withholding from a transferee of a cause of action to cancel a usurious instrument the right which the borrower has to relief without paying or offering to repay the sum loaned. I think the repayment or return of "the money, goods or other thing so taken, accepted or received, or the value thereof," which acquits the lender, referred to in section 376, includes obligations or securities which, under the provisions of section 373, the court may declare void and enjoin prosecution thereon, and order surrendered and canceled. It is true that, if a lender makes so complete a restitution, there would seem little or nothing left for which he could be prosecuted under any provision of the usury article, irrespective of the acquittance under section 376, with the possible exception of the forfeiture under section 372, unless he would still be liable to criminal prosecution under Penal Law (Consol. Laws 1909, c. 40) § 2400. But that would seem not to be barred, if the general language of Judge Bartlett is given full effect. However, it should be noted, as I have already pointed out, that the question involved in that case was whether the offender had been acquitted of an offense against a provision of the Banking Law (Consol. Laws 1909, c. 2).

As has been pointed out, the identical language of the act of 1787 and of the Revised Statutes respecting the making of restitution is embodied in section 376, except that no reference is made to a discovery or bill of discovery. That was omitted. I do not regard that omission as at all significant or important, because the purpose and intent of the consolidation of the statutes, of which section 376 is a part, is declared, so far as the statutes have been reproduced in such consolidation, to be of the same force and effect as before the enactment of such consolidation. Laws 1909, c. 596.

· The heading or caption to the section, "Return of Excess a Bar to Further Penalties," might itself seem more significant, but there is nothing in the General Business Law itself or in the General Construction Law (Consol. Laws, c. 22; Laws 1909, c. 27), or the other act which declares the effect of a statutory construction, to which I

have just adverted, from which so radical a change as is contended for on behalf of the defendant may be inferred.

Without prolonging this discussion, I will simply state my conclusions: (1) The note and collateral were both void for usury; (2) the defendant never acquired any title to the stock; (3) except for his acquiescence to sell the stock, the plaintiff could have maintained an action of trover for the stock at any time; and (4) he can recover the proceeds of the sale in this action for money had and received. If I am right in that conclusion, the motion for the direction of a verdict in favor of the plaintiff for the full amount demanded in the complaint, with interest, should have been granted, and the exception to the refusal of the court to do so was well taken. I think, under the provisions of section 1317 of the Code of Civil Procedure (as amended by Laws 1912, c. 380), that may now be done.

The judgment should therefore be reversed, and the plaintiff's motion granted, and judgment directed for the plaintiff and against the defendant for the full amount claimed, with interest, with costs in the trial court and of this appeal. All concur.