## Van Schaick *against* Edwards.

A. residing in the state of Massachusetts, and owning lands in this state, entered into a contract in that state, with B. residing in·this state, for the sale of lands to him. B. gave A. his bond for the consideration money payable in four years, and also four promissory notes, payable in one, two, three and four years, for the interest on the bond, at the rate of six and a half per cent. and A. executed a bond to B. conditioned to execute to him a conveyance for the land, on payment of the bond and notes. An action was brought by A. against B. in this court, on three of the notes, to which the defendant pleaded usury. Whether the notes were usurious? *Quære.* And whether the law of Massachusetts or of this state is to govern? *Quære.*

This was an action of *assumpsit* on three promissory notes. The defendant pleaded *usury*. The cause was tried at the Albany circuit in September, 1800, before Mr. Justice Benson.

.*The plaintiff being seised of certain lands in the [*356] county of Tioga in this state, on the 1st day of July, 1796, at Pittsfield, in Massachusetts, sold the same to· the defendant, and in consideration thereof took his bond for 1228 dollars and 50 cents, payable in four years, and four promissory notes for 25 pounds each, lawful money of Massachusetts, payable in one, two, three and four years; and the plaintiff thereupon executed a bond to the defendant, conditioned to convey the land to the defendant, upon his paying

(*a*) See Tillinghast's Adams on Ejectment, ed. 1846, pp. 33, 56, 105, 275, notes.

the bond and notes. The notes were given for interest, on the principal sum mentioned in the bond, from the time of sale until the time limited for payment, at the rate of six and a half per cent.

The plea of *usury* set forth the statute of Massachusetts of the 16th of March, 1784, which declares void all contracts for the payment of any principal or money lent, upon a greater interest than six per cent.

The plaintiff, at the time of making the notes, resided, and now resides, at Pittsfield, in the state of Massachusetts, and the defendant in Tioga county, in this state, where the lands lie.

At the time of making the notes, the defendant insisted that the interest should be calculated at six per cent. being the lawful interest of Massachusetts; but the plaintiff urged, that as the lands were situated in the state of New York, he ought to be allowed seven per cent. the lawful interest of this state; and the interest was finally calculated at six and a half per cent. A verdict was taken for the plaintiff, subject to the opinion of the court, on a case containing the above facts.

*Harison,* for the plaintiff.

*Emott,* contra.

RADCLIFF, J. The plaintiff has declared on the three notes separately, and in another count, on an *insi-* [*357] *mul *computassent;* to each of the counts on the note the defendant has pleaded the statute of Massachusetts against usury, and the general issue to the last count. Two questions have been raised.

1. Whether the statute of Massachusetts applies to the case of a *bona fide* sale of lands, where there is no actual loan of money ?

2. Whether the contract, being in Massachusetts, relative to lands in this state, ought not, under the circumstances of the case, to be governed by the law of this state ?

Another question, relative to a variance between the evidence and the plea, was made on the argument; but I under-

Van Schaick v. Edwards.

stand this objection has been relinquished, and that the parties expect a decision on the merits.

In what light the statute of Massachusetts against usury is considered in the courts of that state, has not been shown. We have not, therefore, the benefit of their decisions, and are left to adopt our own construction. It has been stated to be less extensive in its operation than our own or the English statutes ; but on examination, I do not perceive any essential difference. They all profess the same object, and are expressed in terms equally significant and comprehensive. I shall, therefore, consider them as susceptible of the same application.

On the first question, I have no doubt that the statute applies to existing *debts* as well as to immediate *loans* of money ; and equally so whether such debts have arisen from the sale of lands, or from any other source. The statute itself speaks only of loans ; but the forbearance or giving time of payment for a debt, is in substance a loan. It cannot be material whether the money or its value be thus lent, or has been previously received. There appears to have been no controversy on this point, in the cases that have been cited. They relate principally to the question, whether a loan was masked under cover of a sale, not whether a debt arising *from a sale might be the subject of usury. [*358] Usury is defined to be the taking of more than the law allows upon a loan, or for the forbearance of a debt. (1 Vesey, jun. 531.) In the case of *Dewar* v. *Span*, (3 Term Rep. 425,) the forbearance of a debt arising from the sale of a real estate, in consideration of interest at six per cent. was held to be usurious.

The inquiry in the present case, therefore, is, whether the contract created a debt, and whether, for the forbearance of that debt, more than lawful interest was reserved.

The plaintiff sold to the defendant two tracts of land, for which the latter undertook to pay a stipulated price. The value of the land was agreed upon and ascertained, and a bond executed for the amount. Although the contract was still executory as to some of its objects, this immediately con-

stituted a debt due from the defendant, to be paid *in futuro*. For the forbearance of this debt, the notes on which this action was brought were given. If the interest reserved on these notes was unlawful, the contract was usurious, and void by the law of Massachusetts.

On the second point, the general rule of the *lex loci contractus*, if applicable to the case, is fully settled, and has become a principle of universal law in the construction of all contracts. The reason of the rule I apprehend to be, that the parties are considered to have in view the law of the country where the contract is made, and in many cases are bound to be governed by it. It would, therefore, be unjust to invalidate this engagement, or alter its operation or extent, by the law of any other country. If no circumstances attend the present case to take it out of this rule, there will be an end to the question, as far as respects the validiy of the notes, by the law of Massachusetts. But it is certain that circumstances may exist, arising from the situation [*359] of the parties, the nature of the transaction, *or the object of the contract, essentially to vary the rule. Thus, in the case of *Bland v. Robinson*, (3 Burr. 1077,) a bill of exchange drawn in France and made payable in England, was held to be governed, not by the law of France, but by the English law. So on the question of interest, where a bond was executed in England and sent over to Ireland, conditioned to be paid there, without specifying the rate of interest, it was held to carry Irish interest. (Prec. in Ch. 128.) In these cases the place of performance was made the criterion by which to discover the sense of the parties, and ascertain the law of the country which should govern. In another case, (2 Atk. 372,) where the debt was contracted in England, and a bond to secure the payment given in Ireland, Irish interest was allowed; and Lord Hardwicke there observed, that the debt must be considered as referable to the place where the security was made; or who would lend money upon Irish security?

But in cases, (1 Vesey, 427; 3 Atk. 727; Powell on Cont. 421,) where the contract for the debt, and the security, were

both made in England, although the security was taken on an estate in the colonies, it was held, in order to prevent an opportunity of evading the statutes against usury, that no more than English interest could be reserved. This occasioned the statute of 14 Geo. III. which declared that such securities should be valid, although they reserved more than English interest, if they did not exceed the interest of the place where the property was situated. The rule adopted previous to this statute, although, perhaps, originally questionable in itself, has been since confirmed by the English decisions in other cases, and still prevails, particularly in relation to personal contracts.

The residence of the parties has also been regarded with a view to this subject. In the case of *Phipps* v. *The Earl of Anglesea*, (3 Vin. 209, pl. 8,) where portions *were secured by a marriage settlement and by will, [*360] both of which were made in England, but the portions charged on an estate in Ireland, Lord Parker decreed, that as the contract and will were made in England, and all parties resided. there, the money should be paid into court with English interest, and without deducting the charges of return from Ireland.

From these cases it appears, that where the contract is to be performed, or the interest is to be paid, or the security to be taken in another place, deviations from the rule have been admitted, and the law of that place adopted. The residence of the parties alone has not been regarded as decisive; but it has its weight, in order to show their probable intent, and the law of the country they had in view. In the present case it is admitted, that the defendant resided in this state and the plaintiff in Massachusetts. Their residence alone could not, therefore, form a criterion, if it was otherwise more essential.

But there is stronger evidence than this circumstance affords, of the intent of the parties in this instance. The plaintiff expressly claimed New York interest, because the lands were situated here. The defendant resisted the claim, and contended for the interest of Massachusetts. Finally,

they agreed to a medium between both, which could only have been done with a view to the law of this state. So far, then, as the sense of the parties is material on this subject, it is expressly ascertained that they made the law of this state the basis of the contract.

But I think there are circumstances inherent in this case, which show that the law of this state, and no other, was contemplated, and ought to govern. All the parts of this transaction must be deemed to compose one contract. It is entire and indivisible, and the whole must be subject to the law of Massachusetts or of this state. It cannot be divided [*361] and controlled by different *laws. It is also executory in its operation. The defendant, it is true, bound himself absolutely to pay the money, but the plaintiff was unwilling to rely on his personal responsibility. He therefore retained the title of the land, as a security for its performance. The title, in its nature, is local, and exists here, and the security must, of course, be equally so. The security, therefore, exists in this state; and is equivalent, at least, to a mortgage of the premises executed here. Had the title been conveyed, and a mortgage executed, the debt, according to the principle maintained by Lord Hardwicke, would have been referable to the place where the security was made. So, in the present case, although the security does not appear in the form of a mortgage, it is equally effectual, and exists here as the original title did ; and it seems the debt must equally refer to the place where it exists. If this analogy be just, the plaintiff would be entitled, by means of this security, to the benefit of the law of this state, in relation to the interest.

In another view, the question will be attended, and I think more satisfactorily, with the same result. The contract, as has been stated, is executory. It is precisely the same as if the defendant had covenanted to pay the money, and the plaintiff, on receiving it, to convey the premises. Its performance, on the part of the plaintiff, has evidently an immediate reference to the law of this state; for it is an established maxim, that the mode of conveyance must be regulated by

the law of the country where the estate is situated. From the nature of the thing, the parties must, therefore, have had in view a conveyance according to our law. The conveyance must also be considered as intended to be executed here. I do not mean to be understood that it might not be executed abroad ; but the legal presumption is, that it should be done here, and that possession *be delivered with   [*362] it. The performance of the contract, on the part of the plaintiff, is, therefore, clearly to be made here, or, at least, according to our law ; and if the contract be entire, as with regard to this question it must certainly be considered, it follows, that the law of this state must govern it wholly. It appears to me to be irreconcilable to suppose the contract capable of being parcelled, for the purpose of governing different parts of it by the laws of different states. The notes being payable before the time limited for the ultimate performance of the contract, may, in one sense, be denominated independent contracts ; but they are so for the purpose of the remedy only. In this sense, mutual agreements are frequently deemed independent of each other, although contained in the same instrument and relative to the same subject ; but they are not separate contracts ; they still compose one whole, and are more properly termed independent parts of the same contract.

On the question of usury, the investigation of which necessarily embraces the whole transaction, I think they can never be separated. Had the agreement been completely executed, and the notes been given for the consideration money simply, they might, as subsequent and unconnected securities, be considered as forming a separate debt, and as coming within the case of *Dewar* v. *Span*, already cited. In that case, there was a sale of an estate in the West Indies, and a bond given in England for the purchase money, reserving six per cent. interest. This bond was afterwards cancelled, and another given, carrying the same interest. The transfer of the property was complete ; and in a suit brought on the second bond, Lord Kenyon observed, that the simple question was, whether a bond given by one per-

son to another, both resident in England, was valid, though it reserved more than English interest.   The question in the present case is very different, inasmuch as it depends [*363] on the *original contract of sale, which is still open, and to be executed within this state.

I think this case is equally to be distinguished from that of *Stapleton* v. *Conway*, (1 Ves. 427,) in which Lord Hardwicke is reported to have held, that a mortgage made in England on an estate in the West Indies should carry no more than English interest.   His Lordship's opinion is plainly founded on the idea of a simple loan or debt, created in England, between parties residing there, and unconnected with any circumstances arising from the nature or the objects of the contract, to entitle it to India interest.   Although this opinion seems to have been questioned, and probably produced the statute, which, after reciting doubts, prescribes a different rule.   I should be inclined to respect the high authority of Lord Hardwicke, if it were applicable to the case before us. But the circumstances here are essentially different.   The premises, which are the consideration of the contract, are situated within this state ; the parties themselves had an express view to our law ; one of them resided here ; the title was retained as a security for the performance on the part of the defendant ; the agreement was executory, and on the part of the plaintiff was clearly to be executed according to the law of this state, and being entire, it must be wholly governed by it.

For these reasons, I am of opinion, that the law of this state, and no other, must decide, and of course, that no usury exists.

It may also be a question how far the statute of Massachusetts, in relation to this subject, is to be regarded as a penal act ; and whether our courts will enforce the penal laws of another state ; but believing the grounds already stated to be sufficient for the present decision, I forbear to examine the latter points.(*a*)

(*a*) See 1 H. Black. 143 ; 1 Johns. Rep. 95 ; Cowp. 343.

*KENT, J.    1. The act of Massachusetts is sub-  [*364]
stantially the same as the statute of Anne and the
act of this state, on the subject of *usury ;* and is accordingly
to receive the same construction.    1 have compared them,
and the act of Massachusetts is equally extensive in its ope-
ration.    It reaches expressly to all usurious contracts, "for
the loan or forbearance of moneys, or other things actually
lent or sold."

Usury is taking more than the law allows, for forbearance
of a debt ; and whenever a debt is created, and there is an
agreement to pay more than legal interest for forbearance of
payment of it, such agreement is usurious.    (1 Ves. jun. 531.
Cowp. 115.)    If a loan be necessary to constitute a usurious
contract, yet it is not necessary to the creation of a loan, that
the money should be paid on the one hand, and received on
the other ; for the circumstance of a man's money remaining
in another's hands, in consequence of an agreement for that
purpose, will constitute a loan.    (Cowp. 113.)    In the cases
of *Floyer* v. *Edwards,* (Cowp. 112,) and of *Spurrier* v.
*Mayoss,* (1 Ves. jun. 527,) no doubt seems to have been en-
tertained in the court of K. B. or by the commissioners in
chancery, but that upon the sale of lands or goods, an agree-
ment reserving excessive interest for forbearance of payment
of a debt might be usurious.    To make an agreement usuri-
ous, it was held necessary only that there should be a debt
created on such sale, and a corrupt agreement, to take illegal
interest thereon, for forbearance of payment.

In the present case, there was a debt created absolutely, in
the first instance, and an action would lie on the bond, after
the time limited for payment.    It is also stated to have been
proved, that the notes, at the rate of six and a half per cent.
were taken by the express understanding of the parties, as
interest for forbearance of payment of the principal.    It is as-
certained and stated, that this was the view of the
parties at the time.    This *precludes all doubt as to   [*365]
the true intent and meaning of the parties, and all
pretence for saying the interest was here part of the price of
the estate, and not a satisfaction for delay of payment.

2. The second point is, whether the lawful interest of this state is not to be the rule by which the contract is to be governed, notwithstanding it was executed in Massachusetts.

It is the general rule, that interest must be paid according to the law of the country where the debt was contracted, and not according to that where the debt is sued for, (1 Eq. Cas. Abr. 288, 289 ; 1 P. Wms. 396,) and I see nothing to take the present case out of the rule. It is true, the consideration of the debt was lands within this state ; but it has repeatedly been decided, that such a circumstance makes no alteration in the law. In the case of *Stapleton* v. *Conway*, (1 Ves. 428 ; 3 Atk. 727,) Lord Hardwicke observed, that if a contract was made in England for a mortgage of a plantation in the West Indies, and there be a covenant in the mortgage for the payment of eight per cent. interest, it would be within the statute of usury, notwithstanding that was the rate of interest where the lands lay. For if the courts were to suffer a mortgage made in England, on lands abroad, to carry at foreign interest, it would be a method to evade the statute of usury. Such a contract would be as much against the statute as any other contract.

The case of *Dewar* v. *Span*, (3 Term Rep. 425,) is to the same effect. A bond was given in England upon the purchase of an estate in the West Indies, with the reservation of interest at six per cent. and although it was contended on the argument, that though the bond was executed in England it arose out of a contract for the purchase of a West India estate ; yet the court unanimously held the bond to be usurious ; and that if that attempt were to succeed, it would sap the foundation of the statute of usury. And to [*366] prevent certain *inconveniences from the operation of this rule, it was provided by the statute of 14 Geo. III. that all mortgages and securities executed in England, concerning lands in Ireland or the West Indies, and bearing an interest not exceeding six per cent. should be valid ; but this statute did not extend to personal contracts.

It was admitted, in the case of *Robinson* v. *Bland*, (2 Burr. 1078,) that the law of the place where the contract was made was not to be the rule by which it was to be governed, if the same was entered into with an express view to the law of another country; as in that case the bill of exchange for a gaming debt, although drawn in Paris, was, by the express terms of it, made payable in England.(*b*)   But in the present case, there is no such language ; and the law will intend the contract was to be executed where it was made, and to have a reference to the law of that state.

Though it be admitted that the parties had in view the law of this state in the establishment of the rate of interest, that makes no alteration, as I apprehend, in the result.   In the case of *Dewar* v. *Span*, the parties equally had in view the West India rate of interest where the land lay.   Suppose an inhabitant of this state had gone to the plaintiff at Pittsfield for the loan of money, and the plaintiff had exacted seven per cent. and declared in his bond, that as the borrower lived in this state, and the money was to be used here, the parties, deeming it reasonable, had agreed that the rate of interest on the loan should be seven per cent. according to the rate of interest here.   Would such a bond with such an express reference to our law, be valid under the statute of Massachusetts ?   I conclude not ; for notwithstanding the borrower lived here, yet the rule in Huberus applies, that " whoever makes a contract in any particular place, is subjected *to the laws of the place as a temporary   [*367] citizen."   It is not enough that the parties have a view or reference to the law of another state, in the formation of their contract ; for if that were sufficient, the statute of usury would, in every case, at the option of the parties, become a dead letter.   The rule is, that the parties must have a view to the laws of another state in the execution of the contract, and then undoubtedly the contract is to be governed by such foreign law.   Had the money, for instance

(*b*) See also 1 Johns. Rep. 426.   1 Caines' Rep. 412.   Huber. lib. 1, tit. 111, *de conflictu leg.*   2 Johns. Rep. 235.   3 Dallas, 370.   1 H. Black. 684. 4 Johns. Rep. 285.   1 Johns. Cas. 139.

in this case, been made payable at Albany or elsewhere, in this state, then, perhaps, the decision in *Robinson* v. *Bland* would have applied, and our law would have governed ; but no place being appointed, the law will intend the place to be where the contract was made, and where the person resides, to whom the money is payable.

The parties, it is true, must have had in view the law of this state in the execution of the deed for the land ; for the requisite solemnities of conveyance of land must be conformable to the law of the country where the lands are situated. But I cannot suppose that the circumstance of the conveyance has any influence upon the reservation of interest, by the contract for the payment of the money, any more than the West India purchase had in the case of *Dewar* v. *Span.* The payment of the money was a distinct and prior duty. The bond is absolute. The notes for which the present suit is brought were made payable, one, two and three years, before the time for the execution of the deed. They are, therefore, to be considered as a distinct and independent contract, completely executed on the part of the defendant. The plaintiff, by retaining the title in himself until the money was paid, has preserved a *lien* upon the land to the same purpose and effect as a mortgage ; and suppose the *lien* had been retained in the shape of a common mortgage, would that have altered the case ? The circumstance of a mortgage being given to secure the payment of a bond, [*368] reserving usurious interest, has *never been deemed sufficient to take the case out of the statute, though the mortgage be on lands abroad, and intended by the parties to be governed by the foreign law. This was the case in *Stapleton* v. *Conway.*

Suppose then a person in this state had gone to the plaintiff in Pittsfield to borrow money, and the plaintiff had loaned money at seven per cent. and to secure the payment had taken a mortgage on lands here, executed as it must be according to our law, and, for greater security, had got the same recorded in the county where the lands lie, would a suit, in that case, on the bond, in the courts of Massachu-

setts, be governed by our law or by their own ? If by our law, then their statute becomes a nullity, whenever the usurious lender in that state is prudent enough to take the real security abroad for the debt. Then the statute in England of 14 Geo. III. was unnecessary and idle, for it says, mortgages taken in England on lands abroad, and bearing an interest above their legal rate, may be good. But if the bond in that case, would be void, then I ask, where is the substantial difference between the case stated, and the present? The plaintiff has not taken a mortgage in form, but he has done substantially the same thing; he has retained the equitable *lien* in his own hands. It is true, that when the money is paid, a deed is to be executed so as to be valid by our law; and so in the other case, of a mortgage, when the money is paid the fee is to be revested, and the mortgage cancelled, in a valid manner, according to our laws. I see no difference in the cases so material as to render the contract in the one case null and in the other good.

The notes are given, by the express terms of them, for lawful money of Massachusetts; and this being a personal contract, and operating distinctly and independently, and payable where the parties reside, it must be governed by the law of the place where it was made.(c)   *I   [*369] cannot distinguish this case, in reference to the usury, from the cases I have cited.

It being then to be considered that the notes are, by the law of Massachusetts, usurious and void, and that the law of that state, and not of this, is the rule by which the contract for the payment of the money is to be governed, it follows, that we are bound to pronounce upon it according to the law of Massachusetts. It was a principle admitted by this court in the case of *Lodge* v. *Phelps*, (1 Johns. Cas. 139,) that the *lex loci contractus* was to govern in the determination of personal contracts; and this is a rule of justice in practice among all civilized nations. (1 Bos. &

(c) See 2 Esp. Cas. 523. 7 Term Rep. 241. 1 Johns. Rep. 94.

Van Schaick v. Edwards.

Pull. 141, 142.   2 Ersk. Inst. 473, 474.   Huberus, loc. cit.)

I am, accordingly, of opinion, that judgment ought to be rendered for the defendent.

Lewis, J.   How far the *lex loci contractus* is, in this case, to govern, or whether usury is applicable to any contracts but those which respect loans, I shall not consider, because, in my view of the subject, it cannot be affected by them.   For admitting that the decision must be according to the law of Massachusetts, and that the statutes of usury extend to cases of forbearance, where there has been no loan, in my opinion, this would in no country be considered a case within them.   The amount of the bond and notes together constitute the price, upon payment of which the lands were to be conveyed ; and, upon whatever principle the plaintiff may have calculated the difference between his cash and his credit price, whether on that of a certain rate of interest, or of an equivalent for the probable increased value of the land at the period of payment and execution of the conveyance, is perfectly immaterial.   He may, certainly, without exposing himself to the penalties of usury, ask one price, in cash, for his lands, and any greater sum on credit ; and although he should assign as a reason that lands [*370]   sold on credit *ought to yield more than legal interest, the nature of the contract would not be more affected thereby than if he should say, my lands, if kept to such a day will yield me so much, therefore, I will ask it. The notes speak not of interest, and the plain and simple language of the contract is, on your paying me 333 dollars and 33 cents, in four equal annual payments, and the further sum of 1228 dollars and 50 cents, at the end of four years, I will convey to you, &c.

I am of opinion, the plaintiff ought to have judgment.

Lansing, Ch. J. concurred with Lewis, J. on the first point, that the. notes were part of the *price* for the land, and not usurious ; and that the plaintiff was, therefore, entitled to judgment ; on the second point, he concurred with Kent, J. that the *lex loci contractus* ought to govern.   He gave

Mayell v. Potter.

his reasons at large, but the Reporter is unable to state them.

Three of the judges, (contra, KENT, J.) were, therefore, in favor of a judgment for the plaintiff.

Judgment for the plaintiff.(*d*)(*e*)

(*d*) [Old note.] But on the points of law, the judges may be considered as equally divided.

1. LANSING, Ch. J. and LEWIS, J. were of opinion, that the notes were not usurious by the law of Massachusetts. RADCLIFF, J. and KENT, J. contra.

2. LANSING, Ch. J. and KENT, J. were of opinion, that the *lex loci contractus*, or law of Massachusetts ought to govern. RADCLIFF, J, contra ; and LEWIS, J. gave no opinion as to the point. So, on both grounds two of the judges were in favor of the defendant.

(*e*) The question presented in this case has not been decided to the knowledge of the editor. If the bond had been made payable in the state of New York, there would have been no difficulty in determining the case. The transaction would have been valid upon the ground that the contract was to be executed in New York, and also upon the ground that there may be two places of contract—that where it is made, and that where it is to be paid or performed, and that the rate of interest may be stipulated according to either, according to the rule in *Depau* v. *Humphreys*, (20 Martin, 1,) approved in *Chapman* v. *Robertson*, (6 Paige's Rep. 634,) by Walworth, Ch.   Consult Story's Conflict of Laws, ed. 1846, §§ 287 *a*, 298 and 293 *c*, n. 1, where the opinion of Walworth, Ch. in *Chapman* v. *Robertson* is considered, and the dissent of Mr. Justice Story from the reasoning expressed, though the conclusion of the chancellor is admitted to be correct.