Bergan, J. Plaintiff,
a real estate broker, purchased from defendants a building in Flatbush Avenue, Brooklyn, for $15,500. He paid $1,000 in cash and executed a purchase-money mortgage for $14,500. The purchase-money mortgage in terms required the payment of 7% interest. This was in January, 1964. The statute on usury then in effect (General Business Law, former §§ 370, 371) prescribed the rate of interest “ upon the loan or forbearance of any money, goods, or things, in action ” should *147 be 6%. (Of. General Obligations Law, § 5-501, as amd. by L. 1968, chs. 349, 944, 1072.)
The action is to declare the mortgage and the accompanying mortgage note executed on the same terms ‘ ‘ usurious and void ’ ’. At Special Term the complaint was dismissed on the ground a purchase-money mortgage, reflecting the agreement of the parties on the price of the land, did not come within the scope of the statutory clause ‘ ‘ loan or forbearance ’ ’ and hence was not usurious. The Appellate Division reversed the Special Term, holding that while the sellers were free to ‘ ‘ enlarge the purchase money mortgage obligation ” by reason of “ the extension of credit thereon ’ ’ they could not ‘ ‘ exact interest in excess of the lawful rate prescribed in the statute ”.
This ruling means that the parties could have fixed mortgage principal of any amount agreeable to themselves but, having fixed it, could not in terms agree to interest at more than 6%. The Special Term’s ruling meant that interest and principal were integral parts of the purchase price on the sale of land and that the mortgage in these circumstances was not a “loan” within the terms of the statute. It was not, of course, a 1 ‘ forbearance ” in any event.
The basic question, then, is whether a purchase-money mortgage is to be regarded in law as a loan. A fairly well definable line of decisional law suggests it is not a loan. There never seems to have been a case in this court, however, where, as part of the expression of a sale of property made and entirely performable by a noncorporate individual within the State, a rate of interest has been stated baldly and explicitly on the face of the paper in excess of the statutory rate.
The cases that have usually arisen are those in which the excess interest was absorbed, in one way or another, in the total obligation; and occasionally an interest rate authorized in another State has played some part. In rigidly logical terms, whether the interest reflects itself in the total obligation or in an expressed percentage seems indistinguishable in principle. The statute prohibits the proscribed rate “ directly or indirectly ” (Géneral Business Law, former § 371; General Obligations Law, 5-501, subd. 2).
If it be held that the weight of authority of the decided cases in New York has in the past been not to treat a true purchase- *148 money mortgage as a loan, the further question for the court is whether, as a matter of policy, this apparent exception to the interdiction of the usury statute should be continued in contemporary law.
It cannot be doubted that the question is of importance to the community in the purchase and sale of real property and, indeed, of sales of all kinds of property, and there is much to be said for the stability and certainty in commercial transactions that would result if the laws regulating interest be made apply universally to all transactions according to the terms of the recently revised statute.
But if stare decisis remains a guiding principle and the logic of past cases is to be honored, it is difficult, indeed, to escape holding that the purchase-money mortgage in this present case is not a “ loan ” within the terms of the usury statute.
It has been noted that there seems no case in this court in which interest was stated baldly in the instrument above the statutory rate; but Weaver Hardware Co. v. Solomovitz (235 N. Y. 321) comes very close to that. One of four notes there considered is pertinent to the present problem. It was found, and this court stated explicitly by Hiscock, Oh. J., that there was “ an agreement * * * for the payment of interest * * * in excess of the legal rate ” (p. 327). Such a finding is the equivalent of a statement on the face of the instruments. Nevertheless, in the claim by the payee who sold building material for which that note was given reflecting in its amount interest higher than the lawful rate, it was held insofar as it expressed an agreement as to price of material it was not usurious. “ The laws against usury pertain to the loan and forbearance of money and not to the purchase price of building materials ”, said the Chief Judge (p. 331). Since there was a segregation between other loans which had been made and the sale of goods, it was concluded that “ the note under discussion was given solely and simply for the former price. There is no way in which usury could be injected into the note thus given so as to make it void ” (p. 331).
From an analysis of cases stemming from the Statute of Anne in 1713, on which most American usury statutes are modeled, Williston reaches the conclusion that where property is sold “ the parties may agree that the price, if paid after a certain *149 time, shall be a sum greater by more than legal interest than the price payable at an earlier day ” (6 Williston, Contracts [rev. ed.], § 1685, p. 4766). This is so, he notes, even though “ stated in the form of interest ” greater than the legal rate. A leading English case on the usury statute of that country, consistent with Williston’s view, is Beete v. Bidgood (7 B. & C. 453, 108 Eng. Rep. 792).
The general American rule is drawn together in the statement : ‘ ‘ An owner of property may sell it at such a price and on such terms as he may see fit, and such a sale, if bona fide, is not usurious, but a usurious loan in the form of a sale will not be permitted ” (91 C. J. S., Usury, § 18, subd. a, p. 588).
Very early in the judicial history of the State, the Supreme Court of Judicature considered Van Schaick v. Edwards (2 Johns. Cas. 355 [1801]). There, a resident of New York sold at Pittsfield to a resident of New York lands in New York in consideration of four promissory notes. The legal rate of interest in Massachusetts was then 6% ; in New York, it was 7%. The notes called for 6%%.
One of the four Judges who participated in decision (Radcliff, J.) was of opinion the New York statute permitting 7% applied and, therefore, the nature of the agreement was not decisive. Another (Kent, J.) felt the Massachusetts statute applied and that the notes were in consideration of forbearance and hence governed by the usury statute. Two of the Judges (Lansing, Ch. J., and Lewis, J.) were of opinion that, applying the statute of Massachusetts, the notes were not usurious, “ For ”, as Judge Lewis observed, ‘ ‘ admitting that the decision must be according to the law of Massachusetts, and that the statutes of usury extend to cases of forbearance, where there has been no loan, in my opinion this would in no country be considered a case within them ” (p. 369).
Thus, the judgment went for the plaintiff with Kent, J., dissenting; but two of the three Judges voting for the result did so on the ground the notes were not usurious according to Massachusetts law. Here is a case where the views of a majority of the majority voting for the judgment of the court are entitled to weight even though this precise ground for the judgment did not itself represent a majority view of the whole court.
*150 The earliest case in this court (Dry Dock Bank v. American Life Ins. & Trust. Co., 3 N. Y. 344 [1850]) treated Van Schaick v. Edwards (2 Johns. Cas. 355, supra) as authority for the general statement that where a contract is, in form, one of sale or exchange, " if the court in looking at the whole transaction can see, that the value secured to the vendor, was in good faith but the price of the thing sold, or exchanged by him, there can be no usury, whatever the price may be, or the mode in which it may be reserved ” (Gardiner, J., p. 359).
It was held that an exchange of notes or other obligations for a premium greater than the legal rate of interest where the transaction is not a mere disguise for usury is not prohibited by the statute.
In Cutler v. Wright (22 N. Y. 472 [1860]), a note had been executed, probably in New York but payable in Florida, for a sale of lands in the latter State. It called for interest at 8% which would have been permissible in Florida. Judge Davies assumed that even if executed in New York it would be governed by the law of Florida (p. 474); but Judge Seldee, concurring, felt that even if made and performable in New York and thus governed by New York law “ the defence of usury cannot prevail * * * to constitute usury, there must be either a present loan or a forbearance in respect to some debt previously existing; in such a case as this, there is neither ”, since he had noted earlier that the note ‘1 was not given for a loan of money or of goods, or for a pre-existing debt of any kind, but upon a sale of lands ” (p. 482).
A similar result was reached by the General Term, First Department, in Frank v. Davis (53 Hun 636, opn. in 6 N. Y. S. 144), where Willard Bartlett, J., writing for the court, was of opinion that on an agreement to sell real estate the payment of interest to begin some months before the date of the instrument was not usurious. “ No usury can be predicated ”, he noted (p. 145), “on an agreement to sell real estate and receive in payment therefor a purchase-money mortgage bearing the legal rate of interest, to be calculated from a date prior to the agreement ’ Such an arrangement ‘ ‘ is simply the means of increasing the purchase price ”. The decision was affirmed here at 127 N. Y. 673.
*151 A synthesis of the rule in quite classic terms was made by Proskatter, J., in McAnsh v. Blauner (222 App. Div. 381, 382, affd. 248 N. Y. 537): “ There was in fact no usury. A contract which provides for a rate of interest greater than the legal rate upon a deferred payment, which constitutes the consideration for a sale, is not usurious.”
This principle seems to have been regularly followed at the Appellate Division. ‘ ‘ There is no usury in the normal purchase-money transaction where a seller demands a higher price because the consideration is not all in cash ” (Butts v. Samuel, 5 A D 2d 1008 [2d Dept.]). To the same effect and in almost the same language see Bennis v. Thomas (14 A D 2d 895 [2d Dept.]). An instrument which appears on its face to be a purchase-money mortgage may in truth be a cloak for an actual loan at excessive interest and in this situation it may be deemed usurious (cf. Del Rubio v. Duchesne, 284 App. Div. 89). But that is not this case. There is no doubt at all here that the instrument is what it purports to be: a purchase-money mortgage. And there is no subterfuge about it. The 7% is spelled out on its face. Thus it is either good or bad according to its express terms.
Many New York cases illustrate one aspect or another of the rule (Jackson v. Westchester Auto Credit Corp., 293 N. Y. 840; Hall v. Eagle Ins. Co., 151 App. Div. 815, affd. 211 N. Y. 507; Orvis v. Curtiss, 157 N. Y. 657; Siewart v. Hamel, 91 N. Y. 199; Smith v. Cross, 90 N. Y. 549; Quackenbos v. Sayer, 62 N. Y. 344; Schermerhorn v. Talman, 14 N. Y. 93; Brooks v. Avery, 4 N. Y. 225; King v. American Home Sales Corp., 15 A D 2d 932; Morris Plan Ind. Bank of Schenectady v. Faulds, 269 App. Div. 238; People v. Guttin, 266 App. Div. 1023; Archer Motor Co. v. Relin, 255 App. Div. 333; Florida Land Holding Co. v. Burke, 135 Misc. 341, affd. 229 App. Div. 853).
Upon settled authority, then, the purchase-money mortgage here in issue is not void for usury. The order should be reversed, with costs in this court and in the Appellate Division; the order of Special Term dismissing the complaint reinstated, and the question certified answered in the negative.
Chief Judge Fuld and Judges Burke, Scileppi, Keating, Breitel and Jasen concur.
Order reversed, etc.