■ Nelly Szerdahelyi, Respondent, v Barbara L. Harris as Executrix of Martin Harris, Deceased, et al., Appellants. ■

Bloom, J. (concurring). While I am in accord with the end result reached in the opinion of my brother Asch, I reach my conclusion by a somewhat different process of reasoning. Accordingly, I am constrained to set forth my views at some length. I am of the opinion that the primary issue presented for our consideration requires that we determine the effect of a tender back of the excess interest paid by the borrower and received by the lender upon an usurious loan.

I

Plaintiff and her boyfriend were tenants in premises 401 East 66th Street, New York City. The building was converted to cooperative ownership. Plaintiff, as a tenant in possession, elected to purchase. As the closing of title approached, her boyfriend, upon whom she had relied to secure a conventional mortgage, was out of the country. She discussed the matter with her boyfriend's brother, who suggested that they consult Martin Harris, the attorney both for the boyfriend and the boyfriend's brother. Initially, Harris approached Citibank in an effort to procure the necessary funds which would be secured by a mortgage. When he became convinced that a bank loan would be impossible, he suggested that private sources be explored for a short-term loan which would be superseded by a conventional mortgage when the boyfriend returned. Szerdahelyi, the plaintiff, acquiesced.

Harris then approached several of his clients, to no avail. Finally, he approached Mensch, also a client of his, who appeared willing to make the loan. However, she informed Harris that to obtain the funds she would have to liquidate either all or part of her interest in a Dreyfus account which paid her a variable return which approximated 18% per annum. Further, she told Harris that the loan would have to bear a return sufficient to compensate her so that she would suffer no loss by reason of the liquidation of the Dreyfus account and would have to be fully secured. Harris states that he telephoned the Banking Department and was assured that an interest rate of 21% could "comfortably" be charged. Actually, the maximum allowable interest rate, as fixed under Banking Law § 14-a, was 16%.

On November 17, 1981, Harris delivered to Brown, Harris, Stevens, the agent for the sponsor, two checks, one in the sum of $25,000 made to the order of Martin Harris as agent for Barbara Mensch and drawn on the Mensch account with Dreyfus Liquid

Assets, Inc., and indorsed by Harris; the other was drawn by plaintiff on her own checking account, in the sum of $14,161.33. These, together with the deposit paid by plaintiff, represented the full purchase price for the apartment. Simultaneously with the delivery of these checks, plaintiff executed and delivered to Harris a note, guaranteed by the boyfriend's brother, in the principal amount of $25,000, bearing interest at the rate of 21%, payable one year after date. The note permitted prepayments "in any part" without penalty. It also provided for acceleration in the event of default. Additionally, Szerdahelyi delivered to Harris, as security for the loan, a stock certificate representing her interest in the cooperative corporation, together with an irrevocable stock power.

Szerdahelyi paid the interest due on the loan for 11 months. On November 2, 1982, 15 days prior to the maturity date of the loan, her attorneys sent a letter to Harris noting that the loan carried an interest rate in excess of that permitted under Banking Law § 14-a and, accordingly, was usurious. Further correspondence followed both between the attorneys and between Harris and Szerdahelyi. The upshot of this correspondence was the transmission on January 26, 1983 of a check by Harris to plaintiff allegedly representing the excess over the legal rate of interest paid on the loan. On February 3, 1983, the check was returned by Ms. Szerdahelyi's attorneys with the notation that it was unacceptable. By letter dated February 10, 1983, Harris returned the check and made clear that it was an unconditional tender, made pursuant to law. By letter dated February 15, 1983, the tender was again rejected.

Thereafter, this action was commenced, seeking a declaration that the loan was illegal by reason of the usurious interest charged and that the promissory note and the stock power are void; directing a cancellation of the note and stock power and that these two documents, together with the stock certificate, be delivered up to plaintiff, and directing defendants to repay to plaintiff all interest paid under the note.[1] After issue had been joined, plaintiff moved for summary judgment. Special Term granted the motion, according plaintiff all the relief sought by her, and defendants appeal therefrom.

## II

At the outset, we note that defendant Martin Harris, the attorney initially representing both defendants, Barbara Mensch and himself, has died and Barbara L. Harris, as his

---

1. Peculiarly, although General Obligations Law § 5-511 denominates an usurious loan as void, section 5-513 permits recoupment only of that portion of the interest which is in excess of the legal rate (*cf. Pisano v Rand,* 30 AD2d 173 [2d Dept]).

executrix, has been substituted in his place and stead. We note further that the issue to which our attention is here directed was not briefed before us by either side. Nevertheless, we are of the opinion that the assertion of the tender back of the excess interest as affirmative defenses in the separate answers of Harris and Mensch and the specific reference to General Obligations Law § 5-519, together with the statement that a return of the excess interest was unconditionally tendered to Szerdahelyi, contained in the affidavit of Harris submitted in opposition to the motion for summary judgment, are sufficient to preserve the issue for appellate review.

### III

The history of the usury laws is quite old, and rather interesting. For an almost unbroken period, dating back to the time when this State was a colony of the English crown, usury has been forbidden. The earliest statute, enacted in 1717 (1 Colonial Laws of NY ch 328, p 909), was effective for a limited period of five years and outlawed usurious contracts and obligations. Some 15 years after the expiration of the initial statute, it was reenacted. This time, however, it imposed upon the lender a penalty of treble damages (2 Colonial Laws of NY, ch 660, p 980).[2]

In 1837, with the enactment of the Revised Statutes, the usury laws were overhauled. The effect, as set forth in *Curtiss v Teller* (157 App Div 804, 815-816, *affd* 217 NY 649), was to leave the law in the following posture:

"1. All usurious contracts, obligations and securities were void.

"2. Excess interest above the legal rate was recoverable by the party or under certain conditions by certain designated officers.

"3. The lender could be compelled to deliver up all usurious obligations, contracts and securities without borrower paying back anything.

"4. The taking of usury was a misdemeanor.

"5. Immunity to the lender upon making restitution".

More recently, the prohibitions against usury, both criminal and civil, were embodied in Penal Law of 1909 § 2400, which denominated usury a misdemeanor, and General Business Law former § 373, which governed civil penalties and which declared all such loans to be void. Specifically, section 373, as it existed at the time that *Curtiss v Teller* (157 App Div 804, *supra*) and the case which followed it, *Bowery Sav. Bank v Nirenstein* (269 NY 259), were decided, read as follows:

---

2. For an excellent discussion of the history and background of the statutes *see, Curtiss v Teller,* 157 App Div 804, 810, *affd* 217 NY 649.

"All bonds, bills, notes, assurances, conveyances, all other contracts or securities whatsoever, except bottomry and respondentia bonds and contracts, and all deposits of goods or other things whatsoever, whereupon or whereby there shall be reserved or taken, or secured or agreed to be reserved or taken, any greater sum, or greater value, for the loan or forbearance of any money, goods or other things in action, than is above prescribed, shall be void.

"Whenever it shall satisfactorily appear by the admission of the defendant, or by proof, that any bond, bill, note, assurance, pledge, conveyance, contract, security or any evidence of debt, has been taken or received in violation of the foregoing provisions, the court shall declare the same to be void, and enjoin any prosecution thereon, and order the same to be surrendered and canceled".

During this same period section 376 read: "Every person who shall repay or return the money, goods or other things so taken, accepted or received, or the value thereof, shall be acquitted and discharged from any other or further forfeiture, penalty or punishment, which he may have incurred, by taking or receiving the money, goods or other things so repaid, or returned, as aforesaid".

Both *Curtiss v Teller* (157 App Div 804, *supra*) and *Bowery Sav. Bank v Nirenstein* (269 NY 259, *supra*) were concerned with the effect under section 376 of a return of the excess interest on a loan indisputably usurious and void under section 373. Both held the return to be ineffectual to restore legal status to the loan. *Bowery Sav. Bank* (269 NY 259, 264, *supra*) went on to note that section 376 "must be read in the light of the fact that at one time there existed a penalty of treble damages for usury * * * which has since been repealed. In deciding the case at bar we reaffirm that this section 376 was not intended to furnish a simple means of eviscerating the usury laws".

IV

With the enactment of the General Obligations Law in 1963 (eff Sept. 27, 1964), the provisions governing civil liability for usury were transferred, without substantial change, to the General Obligations Law. That same year — 1963 — the State Temporary Commission of Investigation commenced an investigation into the loan-shark racket. Its report on the subject to the Governor and the Legislature (Seventh Annual Report, 1965 NY Legis Doc, No. 100, at 56-65) detailed the extent of the problem and its evils. It noted that the testimony adduced at its hearings had impelled the Governor to request the Attorney-General, the Governor's Counsel and the Superintendent of

Banking " 'to review the testimony and to make recommendations on legislation which may be required' " (id., at 65). The Commission proposed the enactment of a new Penal Law § 2401 which would provide that "the charging of interest at a rate exceeding twenty-five percent per annum on a loan to any individual, partnership, association or corporation, shall constitute the crime of criminal usury, a felony". (Report, *op. cit.*, at 71.)

The law enacted (L 1965, ch 328), although concerned primarily with criminal usury (*see,* Governor's Approval Memorandum, 1965 McKinney's Session Laws of NY, at 2101), went much beyond the simple remedy recommended by the Temporary State Commission of Investigation. Not only did it enact the proposed section 2401, making the charging of interest in excess of 25% per annum a felony punishable by imprisonment for a term not exceeding five years or a fine of $5,000, or both, but it also authorized a grant of immunity, made possession of usurious loan records a crime and included within the definition of assault in the second degree any infliction of bodily injury for the purpose of collecting an usurious loan. These provisions have been revised as a result of the adoption of the new Penal Law in 1965, effective September 1, 1967 (L 1965, ch 1030; *see,* Penal Law §§ 190.40-190.50).

Although wholly unnecessary to the imposition of additional criminal penalties for usury, chapter 328 went on to amend some of the provisions of the General Obligations Law, which deal solely with civil liability. The section of particular importance to the issue before us, section 5-519, was amended to read as follows: "Every person who shall repay or return the money, goods or other things so taken, accepted or received, or the value thereof, shall be discharged from any other or further forfeiture or penalty which he may have incurred *under sections 5-511 or 5-513,* by taking or receiving the money, goods or other thing so repaid, or returned, as aforesaid".

For the most part, the section merely reenacted the prior section 5-519. In one respect, however, the amended section made a major substantive change. It included the emphasized words. The substantive change is of particular importance, for the two sections referred to, sections 5-511 and 5-513, are the penalty provisions of the civil usury article. Section 5-511 requires a court to declare such a loan void and section 5-513 authorizes an action to recover the excess interest paid. If the words of the amendment are to have meaning, they must be read as enacted by the Legislature and "not as the court may think it should or would have been written" (*Lawrence Constr. Corp. v*

*State of New York,* 293 NY 634, 639; *Saltser & Weinsier v McGoldrick,* 295 NY 499, 506). We are not free to import into a statute a meaning which it does not have, under the guise of interpretation or construction. Here, the meaning is clear. A lender who charges a rate of interest in excess of that authorized by Banking Law § 14-a, who tenders back the excess over the permissible rate of interest, is thereby relieved of the penalties provided in General Obligations Law §§ 5-511, 5-513. Indeed, any other interpretation would render the statute meaningless.

Any contention that the amendment to General Obligations Law § 5-519 was enacted to emphasize that restitution would not constitute a bar to a criminal prosecution for usury is put to rest by *People v Young* (207 NY 522; *see also, Hammelburger v Foursome Inn Corp.,* 54 NY2d 580, 591; *Schwartz v Userowitz,* 56 Misc 2d 1016, *affd* 31 AD2d 1010). *Young,* decided more than 70 years ago, clearly indicated that General Business Law § 376 (then the controlling section) dealt only with civil and not with criminal sanctions and did not bar a prosecution for criminal usury.

It is appropriate to note that there are two cases decided by us subsequent to the 1965 amendment to the General Obligations Law (*Yakutsk v Alfino,* 43 AD2d 552; *Crawford v Carlton,* 73 AD2d 530). *Yakutsk* was predicated on the assumption that "[n]o change in the existing law was made in 1965 by the enactment of the section [General Obligations Law § 5-519]. It was taken verbatim from the then existing section 376 of the General Business Law". This, we have shown, was error. What was taken verbatim from General Business Law § 376 was section 5-519 as it originally existed at the time of the enactment of the General Obligations Law in 1963. The substantive changes to section 5-519 were adopted in 1965 with the enactment of Laws of 1965 (ch 328, § 5). *Crawford* was bottomed on *Bowery Sav. Bank v Nirenstein* (269 NY 259, *supra*), which was handed down when General Business Law § 376 was still in effect. Hence, neither *Yakutsk* nor *Crawford* is controlling. Indeed, I am of the opinion that both were wrongfully decided and I would overrule them.

Finally, I do not think it necessary to pass upon the question of whether the transaction before us was a purchase-money mortgage transaction and, therefore, exempt from the strictures of the usury statute (*Mandelino v Fribourg,* 23 NY2d 145). As indicated in the memorandum of the learned Justice who presided at Special Term, that question was not raised in that court. Whether it was preserved for appellate review is, therefore, questionable.

On the basis of the record before us, we cannot tell whether the amount tendered by defendants represents all the excess interest to which plaintiff is entitled. Accordingly, I would reverse the judgment of Special Term (McQuillan, J.), deny the motion for summary judgment and remand the case for trial, with costs to abide the event.

Asch, J. (concurring). Both Justices Sandler and Bloom have essentially framed the basic issue before us as being the effect upon a usurious loan of a tender back of the excess interest paid by the borrower and received by the lender. I am impressed and grateful to each of them for their painstaking research and careful analysis of that issue. They reach different conclusions, which helps persuade me that neither the decided cases nor the statutory law definitively answers the problem that they have posed. The Court of Appeals or the Legislature will have to furnish one. However, I believe that there is a more direct legal answer to the matter before this court, and one which provides, as well, a fair solution.

Defendants Harris and Mensch argue that the underlying transaction constituted a purchase-money mortgage as a matter of law, that the note was not usurious because purchase-money mortgages are an exception to the laws governing usury, and that summary judgment should have been entered dismissing the complaint and directing judgment on the counterclaims for interest due on the note and payment of the $25,000 principal sum.

The law of usury in New York is governed by General Obligations Law § 5-501. Under section 5-501 (1), the legal rate of interest is 6% unless a different rate is prescribed in Banking Law § 14-a. Under section 14-a, the maximum rate of interest permitted is 16% per annum. Ordinarily, a loan made by an individual which provides for interest at the rate of 21% per annum is therefore usurious.

However, if it can be established that the underlying transaction herein was a purchase-money mortgage, then such transaction is an exception to the usury laws, for purchase-money mortgages do not constitute a "loan or forbearance" within the meaning of the usury statutes (*Mandelino v Fribourg,* 23 NY2d 145). Such mortgages may provide a rate of interest in excess of the legal rate (*see, Barone v Frie,* 99 AD2d 129).

Therefore, if the underlying transaction herein constituted a purchase-money mortgage, the loan could not be held to be usurious. A purchase-money mortgage is given to secure money, borrowed for the purpose of purchasing real property, executed at the time of the purchase and contemporaneously with the

acquisition of the legal title, or afterward, but as part of the same transaction to secure an unpaid balance of the purchase price (38 NY Jur, Mortgages and Deeds of Trust, § 7, at 25-26; *Syracuse Sav. & Loan Assn. v Hass,* 134 Misc 82).

There is no disagreement between the parties that the loan was used to purchase an ownership interest in a cooperative apartment and given simultaneously and as part of the purchase transaction. Szerdahelyi argues that there was no purchase-money mortgage given. However, as collateral security, Szerda-helyi delivered to Harris a stock certificate for the shares of stock and the proprietary lease for the cooperative apartment, and also executed an irrevocable stock power which would remain in effect until repayment of the loan. Thus, as the proceeds of the loan were used to purchase an interest in real estate, as the note and stock power were executed at the time of the purchase of the apartment and contemporaneously with acquisition of title, and as the stock power was to secure the money borrowed for the purpose of purchasing an interest in real property, the underlying transaction may constitute a purchase-money mortgage.

Concededly, there was no formal mortgage instrument given to secure the loan. But from the earliest days, the English law recognized that an equitable mortgage may be impressed when money is loaned in reliance upon the security of property of the debtor pledged by him in such a way as not to be enforceable as a mortgage at law (*see, e.g.,* YB 9 Edward IV, 25, 34 [1470], cited in Walsh, Mortgages ch II, Equitable Mortgages, at 34 [1934]). This was and is the law in New York (*Mooney v Byrne,* 163 NY 86; *Chase v Peck,* 21 NY 581; *see,* 38 NY Jur, Mortgages and Deeds of Trust, § 28 *et seq.*).

Szerdahelyi argues that, even if the transaction is determined to be a purchase-money mortgage, it is not exempt from the usury statutes because it did not constitute part of the consideration for the sale of the apartment, as the lenders were not parties to the purchase and sale transaction and had no part in establishing the purchase price or terms of sale, and only a seller may fix interest on a purchase-money mortgage in excess of the legal rate where such interest is part of the consideration of the sale. However, in *Chase Natl. Bank v Sweezy* (281 NYS 487, *affd* 236 App Div 835, *affd* 261 NY 710), it was held that the fact that money was advanced by a third person does not affect the purchase money character of the obligations, provided that the money was loaned with the purpose and intention that it be used in payment of the purchase price.

As the transaction contains several of the elements of a purchase-money mortgage, an issue of fact was raised as to

whether the parties intended the underlying transaction to be a purchase-money mortgage. The lower court thus erred in declaring as a matter of law that the note was usurious and void.

Although Harris seeks summary judgment dismissing the complaint, he did not so move below. While the court may search the record and grant summary judgment, the record does not contain sufficient facts to warrant such action.

Accordingly, the judgment should be reversed.

Sandler, J. P. (dissenting in part). The facts governing statutory sections and legal background are fully set forth in Mr. Justice Bloom's comprehensive and interesting opinion. Notwithstanding its persuasiveness, I am unable to agree with the conclusion he reached. It seems to me clear that the language changes introduced into General Obligations Law § 5-519 in 1965 were not intended to overthrow the construction of the section (then General Business Law § 376) adopted in 1912 in *Curtiss v Teller* (157 App Div 804, *affd* 217 NY 649) and reaffirmed explicitly by the Court of Appeals in *Bowery Sav. Bank v Nirenstein* (269 NY 259). It seems to me equally clear that, as a matter of statutory construction, those changes did not alter the relevant meaning of General Obligations Law § 5-519.

As pointed out in Mr. Justice Bloom's opinion, the statutory sections relating to usurious transactions have existed in essentially their present form since 1837. As presently codified, and as relevant to the issues presented, General Obligations Law § 5-511 declares all usurious contracts void and directs the court, upon an appropriate showing of the usurious character of the transaction, to enjoin any prosecution on an instrument embodying it, and order such instrument to be surrendered and canceled. General Obligations Law § 5-513 authorizes an action by the borrower to recover from a usurious lender the excess of the amounts paid over the lawful rate. General Obligations Law § 5-515 provides that a borrower who commences an action to recover "money, goods or things in action taken in violation of the foregoing provisions of this title" is not required to "pay or offer to pay any interest or principal on the sum or thing loaned", and that the court shall not require "the payment or deposit of the principal sum or interest, or any portion thereof, as a condition of granting relief to the borrower".

The section with which we are primarily concerned is General Obligations Law § 5-519. At the time of the decision in *Curtiss v Teller* (*supra*), that section (then General Business Law § 376) read as follows: "Every person who shall repay or return the money, goods or other thing so taken, accepted or received, or the value thereof, shall be acquitted and discharged from any

other or further forfeiture, penalty or punishment, which he may have incurred, by taking or receiving the money, goods or other things so repaid, or returned, as aforesaid."

The precise issue in this case — the effect under that provision of the return by a lender of excess interest received in a usurious transaction — was squarely presented in *Curtiss v Teller (supra)*. Following a comprehensive review of the historical development of the statutory law, the opinion of the Appellate Division concluded as follows (at pp 817-818): "The contention of the defendant, in effect, amounts to a restoration of the old chancery rule, which saved to the lender the money which he had actually advanced upon the usurious loan, together with interest thereon * * * I think the repayment or return of 'the money, goods or other thing so taken accepted or received, or the value thereof' which acquits the lender, referred to in section 376, includes obligations or securities which, under the provisions of section 373, the court may declare void and enjoin prosecution thereon, and·order surrendered and cancelled. It is true that if a lender makes so complete a restitution there would seem little or nothing left for which he could be prosecuted under any provision of the usury article * * * unless he would still be liable to criminal prosecution under the Penal Law (§ 2400). But that would seem not to be barred". The Court of Appeals affirmed without opinion (217 NY 649, *supra*).

In *Bowery Sav. Bank v Nirenstein (supra,* at pp 263-264), the Court of Appeals explicitly reaffirmed the rule set forth in *Curtiss v Teller (supra)*:

"Assuming that after a proper trial of the issue as raised by the answer it is found that usurious payments were made, may the plaintiff then, by the mere deposit of the usurious excess, relieve itself of further consequences for its wrong in a civil action? The question is no longer open in this court. In *Curtiss* v. *Teller* (157 App. Div. 804) former Presiding Justice KRUSE, of the Appellate Division, fourth department, after ably reviewing the historical development of the statutory law upon this subject, reached the conclusion that the above quoted section 376 could not be construed so as to exempt the usurer from any further consequences by the mere deposit of the amount found to be usurious. This court unanimously affirmed (217 N. Y. 649) * * *

"The 'statute is peremptory and unequivocal in enacting that an usurious obligation is absolutely void.' (*Sabine* v. *Paine,* 223 N. Y. 401, 405.) Section 376 was never intended and cannot be construed to emasculate section 373. In so far as usury permeates the transaction, the restitution must be complete. (*Kellogg* v. *Adams,* 39 N. Y. 28.) It is true that if a lender makes so

complete a restitution there would seem little or nothing left from which he could be acquitted or discharged. This section, however, must be read in the light of the fact that at one time there existed a penalty of treble damages for usury * * * which has since been repealed. In deciding the case at bar we reaffirm that this section 376 was not intended to furnish a simple means of eviscerating the usury laws."

And so the rule has remained. (*See, Yakutsk v Alfino,* 43 AD2d 552; *Crawford v Carlton,* 73 AD2d 530.)

In 1963, the provisions governing civil liability for usury were transferred without significant change to the General Obligations Law, General Business Law § 376 being reenacted as General Obligations Law § 5-519. In 1965, the Legislature amended General Obligations Law § 5-519 to make language changes which, it is here urged, overrule and reverse the construction of the section that had been adopted in *Curtiss v Teller* (*supra*) and consistently adhered to thereafter. General Obligations Law § 5-519 now reads: "Every person who shall repay or return the money, goods or other things so taken, accepted or received, or the value thereof, shall be discharged from any other or further forfeiture or penalty which he may have incurred *under sections 5-511 or 5-513,* by taking or receiving the money, goods or other thing so repaid, or returned, as aforesaid." (Emphasis added.)

Preliminarily it seems to me clear that the changes relied upon were not intended to affect the long-settled construction of the section. As noted in Mr. Justice Bloom's opinion, the changes were made in a chapter of the law (L 1965, ch 328) which included, following an investigation into the loan-shark racket, a criminal usury law (former Penal Law § 2401, now Penal Law §§ 190.40-190.50) that, *inter alia,* made it a felony to charge interest in excess of 25% per annum.

The specification of sections 5-511 and 5-513 in the amended General Obligations Law § 5-519 was almost certainly intended to avoid any possible misunderstanding as to the application of that section to the simultaneously enacted criminal usury section. This conclusion is buttressed by the fact that the amendment also dropped from the section the words "or punishment" which had appeared previously in the phrase "forfeiture, penalty or punishment". It does not seem to me a persuasive refutation of this inference that the Court of Appeals had held many years before in *People v Young* (207 NY 522) that then General Business Law § 376 did not provide immunity with regard to then-existing criminal usury law. Assuming that the Legislature in 1965 was even aware of that precedent and its

relevance, it was surely not unreasonable for the Legislature to undertake to make the situation absolutely clear in a year in which their attention had been focused dramatically on the evils of loan-sharking.

In any event, it is surely extremely implausible that the Legislature would have chosen the language changes here relied on as the method of overthrowing a long-standing judicial construction of the section, and one of such large importance in this area of the law.

No doubt legislation may sometimes have consequences not intended by its authors. But a central problem with the interpretation pressed here is that the language changes relied on did not in fact change the relevant meaning of the section. The statutory language before the change, which discharged under specified circumstances lenders in usurious transactions "from any other or further forfeiture, penalty or punishment, which he may have incurred by taking or receiving the money, goods or other thing so repaid, or returned", embraced "forfeitures" or "penalties" under General Obligations Law §§ 5-511, 5-513. At least as to those sections the change in language did not alter the meaning of the section.

Let me acknowledge that the specification of the two sections undeniably points up a difficulty in the construction adopted in *Curtiss v Teller (supra)* and reaffirmed by the Court of Appeals in *Bowery Sav. Bank v Nirenstein (supra)*, a difficulty that both decisions quite clearly recognized. As interpreted in those two decisions, it is not easy to see what practical function was served by what, at the time of the decisions, was General Business Law § 376. Looked at from the perspective of time, the reference to the once-existing statutory authorization for treble damages actions does not appear to be a satisfactory explanation for the Legislature to have enacted the section in the form in which it had been enacted.

The present wording of General Obligations Law § 5-519 makes it even more difficult to see what function it serves that is consistent with the long-settled construction. Conceivably this doubtful aspect of the prevailing construction may, in a proper case, invite a fresh consideration of the issue by the Court of Appeals, notwithstanding the fact that the rule in question has been followed for over 70 years without provoking any corrective action by the Legislature. But it is surely inappropriate for this court, on the basis of language changes not intended to change the rule and which did not in any way alter the meaning of the section, to overthrow a principle established by the Court of Appeals and twice reaffirmed by this court in decisions rendered

after the 1965 amendment. (*See, Yakutsk v Alfino, supra; Crawford v Carlton, supra.*)

The underlying problem here is that we are dealing with a body of law enacted almost 150 years ago under very different circumstances than prevail today. As applied to the situation here presented, the relevant sections appear to confront the courts with two alternative constructions, neither of which is satisfactory. One construction, that which was adopted in *Curtiss v Teller* (*supra*), appears to mandate unconscionable results in many situations and, indeed, an unconscionable result here. It simply does not make any sense that this lender should not be permitted to recover at least the money that she lent. On the other hand, the alternative construction urged by Mr. Justice Bloom, and which was indeed the approach taken in chancery prior to the passage of the 1837 sections, appears to eliminate any motive for a lender not to engage in usurious transactions. It was clearly this aspect of the matter that influenced the determination in *Curtiss v Teller* (*supra*) and was forcefully underlined by the comment of the Court of Appeals in *Bowery Sav. Bank v Nirenstein* (*supra*, at p 264): "Section 376 was never intended and cannot be construed to emasculate section 373."

I personally am unable to see why it should not be possible to update these ancient statutory sections to permit the court to reach fair and reasonable results; why it should not be possible to authorize sanctions sufficient to discourage usurious loans without mandating forfeitures that in many situations are clearly disproportionate to the wrong that occurred.

In one respect I believe that a modification of Special Term's order is appropriate. As already observed, General Obligations Law § 5-513 permits a borrower who has paid money in excess of that which is lawfully permitted to recover only the excess. The issue apparently was not raised at Special Term, and indeed was not raised here. However, the language is so explicit that it would seem to me appropriate to modify Special Term's order accordingly.

Accordingly, the order of the Supreme Court, New York County (McQuillan, J.), entered February 6, 1984, granting the motion of plaintiff for summary judgment, declaring the loan void by reason of usury, and directing surrender of the note and other relevant documents, and also requiring repayments of all sums previously paid, should be modified to limit the recovery of previously made payments to that sum which is in excess of the lawfully permitted rate, and otherwise affirmed.