HARRY BARTH and LEOPOLD BARTH, Plaintiffs, *v.* FRANK P. W. SCHMITZ, BERTHA W. M. SCHMITZ, LOUIS H. SALTZMANN, D. A. SCHULTE, INC., PLAZA CATERING Co., INC., and LOUIS R. BICK, as Trustee in Bankruptcy of PLAZA RESTAURANT Co., INC., Defendants.

(Supreme Court, Kings Special Term, April, 1918.)

Mechanic's lien — action to foreclose — landlord and tenant — lease — when lien attaches in favor of one who furnished labor and materials — contracts.

Where the landlord of premises rented for restaurant purposes was, by the terms of the lease, in a position to force the tenant even against his will to make necessary repairs, and the lease, which provided that all improvements to the

premises should immediately become the property of the landlord, gave notice to all contractors that the premises would, in effect, be liable for any lien for alterations and repairs, a lien attaches in favor of one who furnished labor and material for the making of· such repairs as were reasonably within the contemplation of the parties at the making of the lease, the landlord having accepted the benefit of such repairs by reletting a portion of the premises for restaurant purposes after the original tenant had vacated the premises.

Where, in an action to foreclose a mechanic's lien for the making of such alterations and repairs, it appears that there were two separate and independent contracts between the plaintiffs and the tenant — one for the sale of certain chattels and the other for the alterations and repairs — the plaintiffs, in the absence of agreement, had the right to apply as they saw fit checks given by a distilling company which was financing the tenant, who, in turn, indorsed the checks to plaintiffs.

A sum advanced to the tenant for the purpose of completing the top floor of the building being in the nature of a loan was not the subject of a mechanic's lien.

Where plaintiffs paid one a weekly wage sufficient to compensate him for superintending work done by laborers selected by him, the amount of an additional sum paid to him by way of profit for which no good nor satisfactory reason was shown must be disallowed.

ACTION to foreclose a mechanic's lien.

Arnold Lichtig (Samuel Seabury, of counsel), for plaintiffs.

Harry L. Horwitz, for defendants Schmitz.

Jerome Eisner, for defendant D. A. Schulte, Inc.

Jacob A. Freedman, for defendant Louis R. Bick.

CALLAGHAN, J. This action was brought to foreclose a mechanic's lien. Plaintiffs seek to fasten liability

Misc.]                  Supreme Court, April, 1918.

upon the defendants Schmitz, the owners of the property, by reason of their consent and acquiescence in the making of the repairs, and upon the provisions of the lease which were that the benefits to be derived from the alterations and repairs should, upon the expiration of the tenancy, become the property of the owners, and upon the further ground that by the terms of the lease the lessee was compelled, in effect, to make the repairs.

Prior to the making of the lease the lessee and the owners discussed the character of the restaurant to be conducted on the premises. The lease provided that the premises are " to be used and occupied as a bar room, cafe, restaurant, ball-room, bachelor apartments and roof garden," etc.

It also provided as follows:

" 14th. The tenant hereby promises to make all repairs, both exterior and interior and to make such alterations as may be necessary for the safe and proper conduct of tenant's business, said repairs both exterior and interior and also all repairs to elevators and elevator machinery and any other apparatus belonging to the building and said alterations, if any, to be made at the expense of the tenant, and the landlords shall not be liable for any manner of repairs in or about said premises or to any part of the street, side-walk or vaults in front thereof. In case of default by the tenant under this paragraph then and in that event the landlords, their successors or assigns make such repairs as may be necessary and all necessary expenses incurred thereby shall be borne by the tenant and shall be deemed collectible as additional rent and shall become due and payable by the tenant to the landlords immediately after the same shall have been paid or incurred by the landlords and the landlords

shall have the right to enter upon the said premises to make such repairs.''

'' 20th. All improvements made in, to or upon said premises by the said Tenant shall become the property of the landlords at once when made.''

The owners resided within a short distance from the property in question and one of them visited the premises from time to time during the period when the alterations were being made. He knew of the nature and character of the alterations and the purpose to which the building was to be put after such alterations were complete.

This is not a case where the lienor seeks to hold the owners merely upon showing knowledge and consent to the making of the repairs. The lease in effect compelled the tenant to make the necessary repairs. If he failed to do so the landlord had the right to enter upon the premises, make them, add the costs to the rent and collect the amount so paid upon the next rent day. For failure to pay this amount when due the sum could have, under the terms of the lease, been treated as rent and the tenant dispossessed from the premises upon his failure to make payment. *Robb* v. *Osgoodby,* 20 Misc. Rep. 622; *Mulligan* v. *Kraus,* 88 id. 538.

By the terms of the lease the situation was created whereby the landlord was in a position to force the tenant, even against his will, to make the necessary repairs; and the lease gave notice to all contractors that the premises would, in effect, be liable for any lien for alterations and repairs. All of the repairs made were such as were reasonably within the contemplation of the parties at the time the lease was made and inured to the benefit of the building for restaurant purposes. The owners have accepted the benefit of these repairs, as they have since the original tenant

vacated relet three floors of the premises for restaurant purposes.

Under all the circumstances in this case there is no question but that a lien for alterations and repairs would attach in favor of one who furnished materials and labor for the improvement. *Jones* v. *Menke,* 168 N. Y. 61; *Schmalz* v. *Mead,* 125 id. 188; *Miller* v. *Mead,* 127 id. 544; *New York El. S. & R. Co.* v. *Bremer,* 74 App. Div. 400; affd., 175 N. Y. 520; *McNulty Bros.* v. *Offerman,* 221 id. 98.

The authorities relied upon by the defendants are not in conflict with this proposition. In those cases there was no lease, but merely passive consent and knowledge on the part of the landlord of the making of the repairs. In some of the cases relied upon by the defendants the repairs were not beneficial to the buildings, or an improvement which inured to the benefit of the buildings.

The question has arisen as to the application of certain payments made by the Gibson Distilling Company to the lessee. Although no testimony was given as to the exact relations between the lessee and the Gibson Distilling Company, it is apparent that that company was financing the lessee under some sort of an agreement by which he would sell the wares of the distilling company. The distilling company gave certain checks to the lessee and he in turn endorsed those checks to the plaintiffs. It is claimed by the owners that these checks should have been applied to the alteration account. Concededly there was no agreement between the lessee and the plaintiffs as to the method and application of these checks. The evidence shows that there were two separate and independent contracts between the plaintiffs and the lessee — one made in August, 1916, for the sale of certain chattels

and the other made in September of the same year for the alterations and repairs. They were never considered between the parties as one contract although the accounts on the books of the plaintiffs show that all money transactions between plaintiffs and the lessee were kept in one account. In the absence of any agreement between the lessee and the plaintiffs, the plaintiffs had the undoubted right to apply the payments as they saw fit. The Gibson Distilling Company had no interest in seeing that the payments were applied to one account in preference to the other. Presumably the only interest it had was to hasten the time when the restaurant could be opened. The owners rely upon the letter of December 6, 1916, from plaintiffs to the Gibson Distilling Company, and the receipt for the payment of $15,000 endorsed thereupon, as evidence that this check was to be applied upon the construction account. That letter throws little light upon the question of application of the payment. The whole tenor of the letter and the testimony of the then attorney for the Gibson Distilling Company show that the interest of that company at that time was in limiting the costs of the alterations. It was of little moment to the distilling company how the payments were applied. I find, therefore, that plaintiffs were justified in applying these payments as they chose.

There is some question as to whether the plaintiffs should be allowed the sum of $3,000 advanced for the purpose of completing the top floor of the building. This sum was in the nature of a loan to the lessee and cannot be considered the subject of a mechanic's lien.

The further question is raised as to the payment of $4,022.56 made by the plaintiffs to one Sinkovitz. It appears that he was paid $50 per week for superin-

tending the work done by laborers selected by him. No good or satisfactory reason was shown for paying him an additional sum by way of profit. It is apparent that the amount paid him weekly was quite sufficient to compensate him for the service he performed, and the fact that he gratuitously presented to plaintiffs' general superintendent $1,000 gives the whole transaction an unsavory aspect. This sum will not, therefore, be allowed to the plaintiffs.

Concededly the agreement between the plaintiffs and the lessee provided that the plaintiffs were to be paid the costs of the materials and labor, plus twenty-five per cent profit, ten per cent overhead expenses, and five per cent architects' fees, making a minimum of forty per cent to be added to the actual costs of the alteration. There must, of course, be some limit to the amount that can be charged to the owner for profit on an improvement of this character and it seems to me that in view of all the facts and circumstances the charge of ten per cent for overhead should not be allowed. It is an unjust burden to place upon the owner. A charge of twenty-five per cent for profit can fairly be sustained under all the facts in this case. The contract was made under rather unusual circumstances. The plaintiffs were compelled to advance large sums of money to pay for material and labor, and it was apparent from the beginning that plaintiffs would be compelled to finance practically the entire undertaking and wait a considerable period of time to be reimbursed.

It follows therefore that plaintiffs are entitled to judgment for $76,106.41, with interest from the date of filing the mechanic's lien which was March 20, 1917. That sum is made up of the following items:

18

| | |
|---|---:|
| Costs of labor and material........... | $67,603 31 |
| To which should be added the contract- | |
| or's profit of twenty-five per cent..... | 16,400 20 |
| And architects' fees five per cent....... | 4,200 20 |
| | $88,203 71 |
| Less the amount which was paid to | |
| plaintiffs......................... | 12,097 30 |
| | $76,106 41 |

Judgment accordingly.