PRICE BROTHERS COMPANY and Erie County Water Authority to the use and benefit of Price Brothers Company, Plaintiffs,

v.

OLIN CONSTRUCTION CO., INC. and Fidelity and Deposit Company of Maryland, Defendants.

FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Third-Party Plaintiff,

v.

George W. OLIN; Sherman D. Olin; and Camillus Airport, Inc., Third-Party Defendants.

No. CIV–80–1122E.

United States District Court, W. D. New York.

Dec. 28, 1981.

Daniel M. Darragh, Buffalo, N. Y., for plaintiffs.

Harold T. Limpert, Syracuse, N. Y., for defendants.

Frederick D. Turner, Buffalo, N. Y., for third-party defendants.

MEMORANDUM and ORDER

ELFVIN, District Judge.

This action arises out of three separate contracts between Price Brothers Company ("Price") and Olin Construction Co., Inc. ("Olin") for the sale of pipe, for use in two separate water transmission main projects, one with the Erie County Water Authority in 1977 and the other with the Niagara

County Water District in 1978. Price alleges that Olin failed to pay a part of the purchase price and accumulated service charges. Defendant Fidelity and Deposit Company of Maryland ("Fidelity") had provided a labor and material payment bond for each project on behalf of Olin. As a supplier of materials to Olin, Price asserts that it is entitled to payment from Fidelity of any unpaid balances and service charges due from Olin. Price also seeks payment from Olin of the costs, expenses and attorney's fees incurred by it in this action.[1]

Olin's Amended Answer asserts one affirmative defense and five counterclaims. The affirmative defense alleges that prior negotiations between Price and Olin regarding the amounts due relative to both projects had resulted in an agreement to offset any amount due Price from amounts due Olin from Price. Olin alleges that Price owes it an amount in excess of that claimed by Price to be due from Olin. In its first three counterclaims, Olin asserts that certain Snap Ring Joints provided by Price for use in the Erie County Water Authority project were defective, that Price thereby breached the express warranty contained in the August 1977 contract and an implied warranty of fitness for a particular purpose and that damages to Olin were subsequently caused solely by Price's negligence in the manufacture and/or supply of the Snap Ring Joints. By its fourth counterclaim, Olin seeks indemnity from Price with regard to a separate action to which Olin claims it was subjected solely by reason of Price's negligence. Olin's fifth counterclaim is based on fraudulent inducement to contract. The fraud counterclaim also states the basis for Olin's assertions that the contractual warranty limitations and exclusions, and claims procedures, are unconscionable.

Price moved for partial summary judgment against Olin and Fidelity on its first three causes of action relative to the Niagara County Water District project, for an order striking Olin's affirmative defense and dismissing Olin's second through fifth counterclaims for the failure of each to state a claim. Olin moved for partial summary judgment on its first, second and fourth counterclaims. Fidelity moved for partial summary judgment against Olin and the third party defendants seeking indemnity for any amounts it may be required to pay to Price as a result of this action, together with its attorney's fees. Fidelity also moved for partial summary judgment dismissing Price's claims under the payment bond for service charges and attorney's fees.

Following oral argument, I issued an Order pursuant to rule 54(b) of the Federal Rules of Civil Procedure [2] granting judgment to Price against Olin on its first, second and third causes of action relative to the Niagara County Water District project and against Fidelity on the first cause of action, granting judgment to Fidelity against Price dismissing the third and sixth causes of action as against it, further granting Fidelity judgment against Olin and the third-party defendants for any sums Fidelity may be required to pay Price and for the amount of Fidelity's attorney's fees in this action. I now turn to consideration of the remaining motions upon which I reserved decision.

*Olin's Affirmative Defense*

Olin asserts in its Amended Answer that, "on information and belief," as a result of settlement negotiations conducted prior to the commencement of this action, the parties agreed to offset against any amounts due Price under its contracts with Olin moneys due Olin from Price, which moneys

---

**1.** Though Price originally sought attorney's fees from Olin *and* Fidelity, it later conceded that attorney's fees are not covered by the surety bond. *See*, Plaintiff's Reply Memorandum, dated July 2, 1981, at p. 13.

**2.** Rule 54(b) provides that, unless the court directs entry of final judgment, an order which

adjudicates fewer than all the claims and rights and liabilities of the parties shall not terminate the action and is subject to revision at any time before entry of a final judgment which does adjudicate all the claims and rights and liabilities of all the parties.

exceed any amount owed to Price by Olin. Price seeks an order striking the affirmative defense pursuant to Fed.R.Civ.P. rule 12(e).

To the extent that the affirmative defense merely reasserts Olin's contention that Price's debt to it exceeds Olin's debt to Price, that claim is fully set forth in Olin's counterclaims and is, as Price asserts, redundant. If offered as proof of settlement, it is inadequate under New York's General Obligations Law § 15–501. That section provides that an executory accord cannot be raised as a defense to a claim in the absence of a writing signed by the holder of the claim.

For the foregoing reasons, the affirmative defense will be stricken insofar as it is redundant and merely repeats Olin's right to relief on its counterclaims. The remaining allegation concerning settlement also will be stricken, with leave to re-plead, if possible, in accordance with the requirements of section 15–501 of the General Obligations Law.

*Olin's Counterclaims*

■ Olin's Amended Answer asserts five counterclaims:

(1) Breach of the express warranty contained in the contract between Price and Olin;

(2) Breach of an implied warranty of fitness for a particular purpose;

(3) Negligence;

(4) Olin's expenses, costs and attorney's fees in a separate action;[3] and

(5) Fraud.

All of the counterclaims concern the August 1977 contract between Price and Olin for the sale of certain 48″ prestressed concrete steel cylinder pipe with LCP Snap Ring Joints for use in the Erie County Water Authority water transmission main project. Olin claims that the Snap Ring Joints were defective and failed to seal properly.

Olin seeks partial summary judgment on its first, second and fourth counterclaims. Olin asserts, as it must, that there is no material issue of fact as to these claims. Such is simply not the case. As to the first counterclaim, numerous material questions of fact exist including, among others, the presence of defects in the Snap Ring Joints, when and in what manner notice of the alleged defects was given to Price, Price's alleged refusal to repair or replace, any one of which precludes the granting of partial summary judgment as to the first counterclaim.[4]

The same issues, and others, similarly preclude the granting of partial summary judgment as to Olin's second and fourth counterclaims. Olin's claim of breach of an implied warranty of fitness for a particular purpose presumes that such a warranty exists and, if it exists, that it has not been properly excluded by the contract and, if it exists and was properly excluded, that such exclusion is unenforceable by reason of fraud or unconscionability. Without reciting each and every question of fact involved in these claims, it is patently clear that Olin's mere assertion of its ultimate right to relief forms an insufficient basis for the granting of summary judgment.

Similarly, Olin's right to what appears to be a claim for consequential damages—to wit, the costs incurred in a separate action—is a matter incapable of resolution in the current procedural posture of this case. The only information provided by Olin is that it was a defendant in a separate action and that it prevailed in that action. Beyond the question whether it was subjected to that action solely by reason of the culpable conduct of the plaintiff, serious questions exist as to Olin's right to recover

---

**3.** *Donald R. Pritchard and Leo A. Hopkins v. Erie County Water Authority and Olin Construction Co., Inc..* No further citation was provided by Olin.

**4.** Price also has indicated a need for further discovery to enable it to respond to Olin's mo-tion for summary judgment as to the first counterclaim. In light of my finding that Olin's counterclaims cannot be disposed of by summary judgment, resort to Fed.R.Civ.P. rule 56(f) is unnecessary.

consequential damages given that the contract explicitly exempts Price from liability for consequential, indirect or incidental damages of any kind. Again, Olin's ability to escape the terms of the contract depends on its ability at trial to establish fraud and/or unconscionability.

Price has moved to dismiss Olin's second, third, fourth and fifth counterclaims for the failure of each to state a claim upon which relief can be granted. Because matters outside the pleadings[5] have been presented and considered as to the second, fourth and fifth counterclaims, Price's motion relative to those counterclaims must be treated as one for summary judgment pursuant to Fed.R.Civ.P. rule 12(b).

In response to Olin's second counterclaim, alleging breach of an implied warranty of fitness for a particular purpose, Price argues that the contract properly excluded any implied warranties of merchantability and fitness for a particular purpose. The Uniform Commercial Code ("U.C.C."), § 2–316(2), provides that to exclude or modify an implied warranty of merchantability the language must mention merchantability and, in the case of a writing, be conspicuous. To exclude or modify any implied warranty of fitness for a particular purpose, there must be a writing, and it must be conspicuous. It is sufficient if the contract provides that "there are no warranties which extend beyond the face hereof." U.C.C. § 2–316(2).

The contract between Olin and Price declares, in the manner directed by the U.C.C., that:

"THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THE ABOVE [express warranty]. WE DISCLAIM ANY IMPLIED WARRANTY OF MERCHANTABILITY. OUR SOLE RESPONSIBILITY IS AS STATED."

If the only source by which to determine the parties' intent was the contract itself, Price would be entitled to summary judgment dismissing Olin's counterclaim based on an implied warranty. *See, e.g., Am. Elec. Power Co. v. Westinghouse Elec. Corp.*, 418 F.Supp. 435 (S.D.N.Y.1976), and *Bakal v. Burroughs Corporation*, 74 Misc.2d 202, 343 N.Y.S.2d 541 (S.Ct., Schenectady Co. 1972). The same is true with regard to Olin's counterclaim for the costs of a separate action as consequential damages. The contract clearly states:

"4.c. We [Price] shall not be liable for consequential, indirect or incidental damages, including without limitation, any liquidated damages or penalties of any kind, whether arising from delays during replacement of materials for cause, or otherwise."

In this instance, however, defendant has laced its counterclaims with allegations of unconscionability as to the contractual disclaimer and exclusion of warranties and the claims procedures. The substance of those allegations is explained more fully by reference to the fifth counterclaim based on fraud. Essentially, Olin alleges that Price stated in August 1977 that the Snap Ring Joints were "of high quality, fit for the purpose purchased," that such statements were false in that the joints were defective and unfit for the purpose sold, that such was known to Price at the time the statements were made, that the statements were made with the intent to deceive and defraud Olin and that Olin was induced to contract for the purchase of the Snap Ring Joints in reliance on such statements to its detriment. *See*, Olin's verified Amended Answer, at ¶¶ 40–45.[6]

---

5. Particular reference is made to Sherman D. Olin's Affidavit of May 29, 1981 and his response, dated September 17, 1981, to Price's First Set of Interrogatories.

6. The May 29, 1981 Affidavit of Sherman D. Olin makes no explicit mention of fraud or unconscionability, and deals primarily with Olin's claims of breach of the express warranty and an implied warranty. However, in its re-

sponse to Price's First Set of Interrogatories, No. 3(i), Olin again states that:

"The claims procedures and disclaimer provisions in the contract were unconscionable in that they contained an unfair disclaimer of warranties, Price Brothers failed to disclose manufacturing or design defects of which they had knowledge, and there was misrepresentation and fraud in the sale by Price Brothers."

While the courts and the drafters of U.C.C. § 2–302 have been unwilling to define its scope explicitly,

"[t]he procedural element [of the unconscionability doctrine] involves the contract formation process, which in turn includes * * * misrepresentation and fraud on the part of the seller * * *. See *Seabrook v. Commuter Housing Co., Inc.*, 72 Misc.2d 6, 338 N.Y.S.2d 67 (1972)." *Nu Dimensions Figure Salons v. Becerra*, 73 Misc.2d 140, 340 N.Y.S.2d 268, 272 (N.Y. City Civ.Ct.1973).

■ If Olin is able to establish its claim for unconscionability or fraudulent inducement, the contractual provisions raised as a bar to Olin's counterclaims would not preclude Olin from asserting its right to all remedies available under the U.C.C. for non-fraudulent breach (*see*, U.C.C. § 2–721) as well as the remedies available under U.C.C. § 2–302. Though the issue of unconscionability is ultimately a matter of law for the court to decide (U.C.C. § 2–302; and *County Asphalt, Inc. v. Lewis Welding & Engineering Corp.*, 323 F.Supp. 1300 (S.D.N.Y.1970), *aff'd.*, 444 F.2d 372 (2d Cir.), *cert. denied*, 404 U.S. 939, 92 S.Ct. 272, 30 L.Ed.2d 252 (1971)), U.C.C. § 2–302(2) cautions that:

"When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."

The required showing is substantial, particularly where, as here, the claim is raised between two commercial parties. *County Asphalt, Inc. v. Lewis Welding & Engineering Corp., supra.* Unconscionability has rarely been found in a wholly commercial setting. *Wilson Trading Corp. v. David Ferguson, Ltd.*, 23 N.Y.2d 398, 297 N.Y.S.2d 108, 244 N.E.2d 685 (1968).

Price asserts, however, that when the alleged oral fraud is *specifically* contradicted by the written terms of the contract between the parties, the parol evidence rule precludes the introduction of evidence relative to fraud. *See, Centronics Financial Corp. v. El Conquistador*, 573 F.2d 779 (2d Cir. 1978); and *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 184 N.Y.S.2d 599, 157 N.E.2d 597 (1959). The parol evidence rule is a rule of substantive law. Its interpretation is therefore governed by New York law. *Centronics, supra* at 782, *citing to Erie R. R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

As stated by the court in *Centronics*:
"Under New York law a well pleaded claim of fraud in the inducement of a contract relied upon by a defendant states a sufficient issue for trial, *Sabo v. Delman*, 3 N.Y.2d 155, 159, 164 N.Y.S.2d 714, 716 [143 N.E.2d 906] * * * (1957), on which parol evidence is admissible in New York * * *. An oral representation which is fraudulent and which induces reliance may be a defense even though it contradicts a provision of a written contract * * *.

" * * * Only if the written contract included a specific disclaimer of the very representation later alleged to be the foundation for rescission would such proof be barred. *See Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 184 N.Y.S.2d 599 [157 N.E.2d 597] * * * (1959)."

In *Centronics*, the alleged oral representation directly contradicted a term of the contract, but the general merger clause was insufficiently specific to preclude evidence of fraud. In *Danann*, at 184 N.Y.S.2d 601–602, 157 N.E.2d 597, the merger clause explicitly disclaimed any representations as to the *expenses* or *operations* of the building, which was the subject of the contract, and expressly acknowledged that no representations, other than those set forth, were being relied upon by either party. The court found that such language precluded the introduction of oral representations as to the expenses to be incurred in operating the building and the profits to be derived.

Applying the exception carved out by *Danann* to the circumstances present in this case, I am persuaded that *Danann* is not controlling. The analogy to *Danann* would

be direct if the instant contract specifically stated that no representations as to the quality or sealing ability of the Snap Ring Joints had been made or were relied upon in the formation of the contract. Instead, the contract contains a general merger clause (which is, by itself, clearly insufficient to preclude evidence as to fraud) and an exclusion of implied warranties and consequential damages. Assuming arguendo that the exclusion and limitation of remedies clauses are properly drawn and would preclude a claim for breach of an implied warranty and consequential damages based solely on the contract, the claim for fraudulent inducement is still proper.

"[A] claim arising out of fraudulent inducement is considered to rest upon an independent tortious act. The plaintiff sues not for any breach of contract but for injuries suffered as a result of the defendants' conduct which is separate and distinct from the formal contract." *Plum Tree, Inc. v. N. K. Winston Corporation*, 351 F.Supp. 80, 85 (S.D.N.Y.1972).

Consequently, I will allow Olin to proceed with its counterclaim based on unconscionability and/or fraud and to introduce at trial evidence which has the effect of contradicting the terms of the written contract. Price's motion for summary judgment as to the second, fourth and fifth counterclaims is denied.

■ Price also has moved to dismiss Olin's third counterclaim which is based on negligence in the supply and/or manufacture of the Snap Ring Joints. Price asserts that New York does not recognize a cause of action in negligence (or strict products liability) when the recovery sought is economic loss. *Martin v. Dierck Equipment Co.*, 43 N.Y.2d 583, 403 N.Y.S.2d 185, 374 N.E.2d 97 (1978); and *Steckmar Nat. Realty, Etc. v. J I Case Co.*, 99 Misc.2d 212, 415 N.Y.S.2d 946 (S.Ct., N.Y.Co.1979). Price correctly states the prevailing New York rule and is entitled to dismissal of Olin's third counterclaim.

As stated by the court in *Steckmar*:

"A cause of action for negligence or for strict products liability, seeks to provide a remedy for an individual injured because of another's violation of an obligation imposed, not by contract, but by law. It does not attempt to afford the injured party the benefit of any bargain but rather endeavors to place him in the position he occupied prior to the injury.

"This fundamental distinction is reflected in the principle that economic loss is not the character of harm contemplated by the rule which renders a manufacturer liable for negligence or strict products liability * * *.

"Damages for inferior quality short of an accident should better be left to suits between vendors and purchasers since they depend on the terms of the bargain between them." 415 N.Y.S.2d at 948–949.

Though the courts have shown some willingness to deviate from this rule in the context of a strict products liability claim raised by a remote user against the manufacturers of a defective product, *see, e.g., Schiavone Const. Co. v. Elgood Mayo Corp.*, 81 A.D.2d 221, 439 N.Y.S.2d 933 (1st Dept. 1981), the motivation for so doing rests on a desire to find some remedy for the remote buyer who, in the absence of privity, may be left without any remedy at all. 439 N.Y.S.2d at 936. Such is not the case between a vendor and purchaser who have by their contract determined the appropriate apportionment of the risks each should bear.

*Fidelity's Liability for Service Charges*

■ The final issue before me concerns Fidelity's liability, as surety for Olin, for any accumulated service charges due Price under its contracts with Olin. Price and Fidelity have cross-moved for summary judgment. Though I have hesitated in other aspects of this case to grant summary judgment, I do not with respect to this issue. Despite the fact that I am called upon to construe contractual language, neither party has indicated that the introduction of testimony or extrinsic evidence

would assist me in that task, or even that such evidence exists.[7]

Pursuant to the surety bond, Fidelity is obligated, upon Olin's default, to pay:

"*all lawful claims* of subcontractors and of materialmen and other third persons arising out of or in connection with said Contract and the work, labor, services, supplies, material furnished, and improvements contracted for and/or furnished, in and about the performance and completion thereof." (Emphasis added.)

Under the terms of the contract between Olin and Price, payments due and owing for more than 30 days after the date of the invoice are subject to a service charge of 1½% per month.

Fidelity's argument rests on two propositions; first, that the rights of a materialman must be defined by reference to New York's Lien Law and, second, that the finance charge is analogous to a charge for an advance or a loan of money from Price to Olin. Fidelity then points to cases holding that an advance of money by a supplier to a general contractor for purposes of completion of a project is not the proper subject of a mechanic's lien. *Barth v. Schmitz*, 103 Misc. 267 at 272, 170 N.Y.S. 51; *see, also, Kerby v. Daly*, 45 N.Y. 84 (1871). By analogy, Fidelity submits that finance charges are not the proper subject of a material payment bond.

Price argues that the finance charge is neither a penalty nor interest on a loan but part of the purchase price itself for which the surety is undisputably liable. Price's contentions are well supported under New York law. *See, Grumman Flexible Corp. v. City of Long Beach*, 505 F.Supp. 623, 626 (E.D.N.Y.1980); *Zachary v. R. H. Macy & Co., Inc.*, 31 N.Y.2d 443, 340 N.Y.S.2d 908, 293 N.E.2d 80 (1972); *Mandelino v. Fribourg*, 23 N.Y.2d 145, 295 N.Y.S.2d 654, 242 N.E.2d 823 (1968); *Ruminant Nitrogen Products v. Zittel*, 78 A.D.2d 766, 433 N.Y.S.2d 644 (4th Dept. 1980); and *GTP Leisure Products v. Cannella*, 58 A.D.2d 1040, 397 N.Y.S.2d 292 (4th Dept. 1977).

In *Zachary v. R. H. Macy & Co., Inc., supra*, the court stated:

"Unlike interest charges, which are assessed for 'the loan or forbearance of any money', * * * service charges on retail credit sales are generally defined as charges 'for the privilege of purchasing on credit', expressed as a time-price differential * * *.

"In the sale of goods, any amount charged the buyer over and above the ordinary cash price is not interest, but an amount calculated as a 'time price differential' designed to compensate sellers for additional risk and loss of interest which would ordinarily accrue had he received immediate payment." 340 N.Y.S.2d at 918, 293 N.E.2d 80 (text and n.5).

Moreover, neither New York's Lien Law nor its State Finance Law § 137, which governs bonds issued in the context of public improvements for the State of New York, is controlling in the context of a common law bond such as the one at issue here. *See, Sullivan Highway Products Corp. v. Edward L. Nezelek, Inc.*, 52 A.D.2d 986, 383 N.Y.S.2d 463 (3rd Dept. 1976). In *Sullivan*, the court noted that the bond in question was required by a county in its contract with the general contractor.

"Thus, we may not read into a common law bond any statutory requirement, but it is to be interpreted independently of any statute * * *." 383 N.Y.S.2d at 465.

Though research has failed to disclose any New York cases directly on point, Fidelity and Price assert authority from other jurisdictions to buttress their arguments. Fidelity cites a Pennsylvania case wherein the court restricted the scope of the surety's liability to pay the "amount due" so as to exclude finance charges. *See, Lite-Air Products, Inc. v. Fid. and Dep. Co. of Md.*, 437 F.Supp. 801 (E.D.Pa.1977); *also see, Can-Tex Industries v. Safeco. Ins. Co. of Alabama*, 460 F.Supp. 1022 (W.D.Pa.1978).

---

7. The bonds in question were drawn by the respective water authorities, not by the surety or principal.

The critical distinction between the Pennsylvania cases and this case is that the Pennsylvania courts relied on a Pennsylvania statute requiring surety bonds for public works projects. The intent of that statute as described by the court in *Can-Tex* was:

> "To place subcontractors in the same position with respect to defaulting contractors on a public works project as they would have enjoyed by virtue of a mechanic's lien on a private construction project." 460 F.Supp. at 1025.

Thus, the court was bound to construe the bond statute *in pari materia* with the lien law which did not protect finance charges. As previously noted, in New York common law bonds are not controlled by statute.

The Michigan Court of Appeals reached a decision contrary to that of the Pennsylvania courts in *Price Brothers Company v. Charles J. Rogers Construction Company and The Aetna Casualty and Surety Company,* 104 Mich.App. 369, 304 N.W.2d 584 (1981).[8] In that case the surety's bond was conditioned on the principal's payment of "all indebtedness" arising "on account of any labor performed or materials or supplies furnished." The Michigan public works bond statute also granted a materialman the right to sue on a payment bond for the balance unpaid and prosecute the action to a judgment for "the sum justly due him." P. 587. The Michigan court held that the "sums justly due" included the service charge. In doing so, the court rejected the surety's contention that the service charge constituted a separate loan, finding instead that it reflected the supplier's increased cost when its bills are not paid in a timely fashion, that is, the time-price differential.[9]

Finding as I do that the finance charge is properly characterized as part of the purchase price itself, there is no question that it falls within the scope of the surety's liability to pay "all lawful claims" of materialmen.[10] Price is therefore entitled to partial summary judgment on the issue of Fidelity's liability for any finance charges and Fidelity's corresponding motion must be denied.

Now, therefore, for the foregoing reasons, it is hereby

ORDERED that Price's motion to strike Olin's first affirmative defense is granted with leave to Olin to file and serve a further amended pleading within thirty days of entry of this Order, that Olin's motion for partial summary judgment on its first, second and fourth counterclaims is denied, that Price's motion for partial summary judgment dismissing Olin's second, fourth and fifth counterclaims is denied, that Price's motion to dismiss Olin's third counterclaim for failure to state a claim on which relief can be granted is granted, that Price's motion for partial summary judgment on its second cause of action is granted, and that Fidelity's cross-motion for partial summary judgment on Price's second and fifth causes of action is denied.

---

**8.** A copy of the slip opinion is attached to Price's Reply Brief.

**9.** The Michigan court also concluded, by way of a rather tortured analysis, that finance charges directly enhance the value of the project by allowing delayed payment rather than cash on delivery, thereby bringing the charge within the confines of the Lien Law provisions. For reasons previously noted, such analysis is unnecessary to this decision.

**10.** Fidelity and Price have asserted varying rules of construction concerning whether the terms of a bond should be construed *strictissimi juris* in the surety's favor or liberally in favor of the beneficiary. Under either rule of construction the surety is liable for the price of the goods, thereby making further discussion of this issue unnecessary.